JOHN S. PATANE, Appellant, v DONNA GRIFFIN, Respondent. (Action No. 1.)

JOHN S. PATANE, Appellant, v FRED BROOKS et al., Respondents, et al., Defendants. (Action No. 2.)

Third Department, November 21, 1990

APPEARANCES OF COUNSEL

*William R. Morgan* for appellant.

*Bond, Schoeneck & King (S. Paul Battaglia* of counsel), for Donna Griffin, respondent.

*Mackenzie Smith Lewis Michell & Hughes (Leslie A. Bowser* of counsel), for Fred Brooks, respondent.

### OPINION OF THE COURT

MERCURE, J.

These actions arise out of a controversy surrounding plaintiff's land acquisition practices. In 1980, when plaintiff was Town Supervisor of the Town of Lenox and a member of the Madison County Board of Supervisors, he began acquiring land parcels in the Peterboro Swamps in the Town of Smithfield, Madison County, which were listed on tax maps as "owner unknown". Plaintiff, himself describing his methods as "unconventional", would pay delinquent taxes on the various lots and obtain quitclaim deeds from individuals who may or may not have had any ownership interest in the property, in an attempt to develop sufficient indicia of ownership to eventually acquire title.

In the fall of 1986, several Smithfield residents, citing interference with the downstream water supply, objected to plaintiff's rebuilding of a beaver dam on one of his acquired properties. Thereafter, defendants Donna Griffin, Scott Griffin, Fred Brooks and other citizens questioned plaintiff's land acquisition practices because of concern that his political office may have provided access to inside information and an unfair advantage in the acquisition of the lands. Eventually, a group known as the Concerned Citizens of Madison County forwarded a letter dated October 20, 1986 signed by 14 persons including the Griffins and Brooks, to the District Attorney

requesting a full Grand Jury investigation "to determine if there are any unethical dealings" in plaintiff's land acquisitions.

Plaintiff thereafter commenced action No. 1, asserting causes of action for prima facie tort and defamation, against Donna Griffin in September 1987. At about the same time, action No. 2, also asserting causes of action for prima facie tort and defamation, was commenced by plaintiff against, among others, Brooks and Scott Griffin. Following motions by defendants* and the submission of an affidavit by plaintiff's attorney stating that plaintiff "has elected not to oppose" summary judgment in defendants' favor, Supreme Court granted summary judgment dismissing the complaints and ordered plaintiff to appear for an examination under oath on the issue of whether he had a reasonable basis to commence the actions. After the examination, defendants moved for sanctions and plaintiff cross-moved to reopen the award of summary judgment and for sanctions against defendants. Supreme Court denied plaintiff's cross motion and, after an inquest, awarded defendants certain amounts to reimburse them for their counsel fees and costs. Plaintiff now appeals.

Turning first to plaintiff's defamation claims, it is well settled that plaintiff, as a public official (see, *Duffy v Kipers,* 26 AD2d 127), must demonstrate by clear and convincing evidence that the complained of statements were made, their falsity, their defamatory meaning and that their publication by defendants was with actual malice, i.e., "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not" (*New York Times Co. v Sullivan,* 376 US 254, 280). Further, criticism regarding the official conduct of a public official (see, *Duffy v Kipers, supra),* and even the private actions of such an official which involve his official position (see, *Gilberg v Goffi,* 21 AD2d 517, 526, *affd* 15 NY2d 1023), is entitled to a qualified privilege.

As to plaintiff's first claim that Donna Griffin told Robert Haskell that plaintiff "has added parcels to the deeds he has obtained prior to recording them", plaintiff concedes that these words were never stated but claims, instead, that Haskell was shown a tax map of "owner unknown" lands upon which was written "[plaintiff] paid taxes, title ???". We agree with Supreme Court that the notations on the map, without

---

* Unless otherwise noted, Donna Griffin, Scott Griffin and Brooks will collectively be referred to as defendants.

more, would not cause the average person to believe that plaintiff was being defamed (see, James v Gannett Co., 40 NY2d 415). The second allegedly defamatory statement, that Ted Lawrence and Chris Lawrence were told that plaintiff had obtained land from the county "after the County took title and before it could reach the auction block", cannot sustain a determination of defamation by defendants. This accusation is refuted by the affidavit of Ted Lawrence, who stated that although plaintiff's land acquisitions were discussed, there was no mention of illegality or any implication that such activity was illegal. Moreover, even if the statement was intended to charge illegal conduct, plaintiff has not demonstrated that the statement was made with actual malice (see, Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 382, cert denied 434 US 969).

The third allegation of defamation claims that defendants coauthored a flyer which stated "that [p]laintiff had killed off all the beaver, the mink and the otter in the vicinity of the Miller Lake Goose Preserve". Plaintiff has failed to produce not only the flyer, but also any evidence to show that the flyer existed, that its contents were as plaintiff claimed or that defendants authored the material with actual knowledge of the falsity of the contents. As to the letter sent to the District Attorney, it suffices to note that a qualified privilege protects good-faith communications to a prosecutor regarding possible criminal activity prior to the commencement of a criminal proceeding (Toker v Pollak, 44 NY2d 211, 221) and there has been no demonstration of bad faith on the part of defendants. Our review of the record demonstrates that plaintiff's other defamation claims are similarly meritless.

Supreme Court also properly dismissed the causes of action sounding in prima facie tort because plaintiff failed to allege specific damages, instead making rather broad, conclusory allegations such as "irreparable injury to his reputation" and "great mental pain and anguish", which were clearly insufficient (see, Freihofer v Hearst Corp., 65 NY2d 135, 143). Moreover, plaintiff has not established that "malevolence [was] the sole motive for defendant[s'] otherwise lawful act[s]" (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 333).

Thus, all causes of action asserted in both complaints were devoid of merit. Moreover, the patently false factual allegations in the complaints and the absence of evidence of malice on the part of defendants amply support a finding that

plaintiff was aware that the actions were without any reasonable basis in law or fact *(see,* CPLR 8303-a [c] [ii]). Accordingly, we agree with Supreme Court's finding that the actions were frivolous.

■ This determination notwithstanding, plaintiff urges that because CPLR 8303-a was drafted to address the problem of rising insurance costs, its application is unwarranted with regard to defamation actions where, as here, defendants are uninsured. We disagree. The legislative history does not support such a restrictive application of the statute. While the Governor's program memorandum to CPLR 8303-a states that the statute is "designed to address [the] availability and affordability of liability insurance", it noted that sanctions were then available only against frivolous medical or dental malpractice claims, and that "[t]he reduction of unnecessary litigation costs which will result by expanding these sanctions to all tort actions is a critical means of assuring justice to all parties" (Governor's program mem, 1986 NY Legis Ann, at 134, 136). In our view, the statute is intended to benefit all litigants, whether insured or not *(see, Mitchell v Herald Co.,* 137 AD2d 213, 218, n 2, *appeal dismissed* 72 NY2d 952; *cf., Banat v Passalaqua,* 142 AD2d 706, 707).

■ Next, plaintiff argues that sanctions should not have been imposed because of his good-faith willingness not to oppose the granting of summary judgment for defendants. Again, we disagree. Although the voluntary discontinuance of an action after learning that it lacked a reasonable basis is a factor in the evaluation of a litigant's good faith *(see,* CPLR 8303-a [c] [ii]), it is not determinative here. First, as noted by Supreme Court, plaintiff moved to reopen the award of summary judgment in response to defendants' motion for sanctions, with "no claim of greater proof available". Second, these actions were commenced shortly before plaintiff's run for reelection as Supervisor in November 1987. It was not until December 1987, when the lawsuits could no longer affect the outcome of the vote, that plaintiff acquiesced in the grant of summary judgment. The record provides ample support for Supreme Court's determination that these actions were commenced "only as a means to quiet public criticism prior to the election with no reasonable or good faith belief that plaintiff could prove any of the allegations".

■ Contrary to plaintiff's assertion, the fees and costs associated with both the postjudgment examination of plaintiff and the preparation of the application for sanctions were appropri-

ately considered by Supreme Court, particularly since plaintiff opposed the motion for sanctions by cross-moving to reopen the award of summary judgment. We reject defendants' argument, however, that this matter should be remitted for an assessment of sanctions with respect to plaintiff's pursuit of this appeal. Plaintiff's appeal, although lacking in merit, is not properly categorized as "frivolous" *(see, Banat v Passalaqua, supra)*.

As a final matter, since plaintiff has not on this appeal advanced any argument for reopening the grant of summary judgment, we deem that issue abandoned *(see, Royal Indem. Co. v Grunberg,* 155 AD2d 187, 190; *Lamphear v State of New York,* 91 AD2d 791).

MAHONEY, P. J., KANE, CASEY and LEVINE, JJ., concur.

Judgments affirmed, with costs.