[610 NYS2d 628]

WALTER SWEENEY, Appellant, v PRISONERS' LEGAL SERVICES OF NEW YORK, INC., et al., Respondents.

Third Department, April 14, 1994

---

### APPEARANCES OF COUNSEL

*Rowley, Forrest, O'Donnell & Hite, P. C.,* Albany *(Brian J. O'Donnell* of counsel), for appellant.

*Harris, Beach & Wilcox,* Rochester *(Edward H. Fox* of counsel), for Prisoners' Legal Services of New York, Inc., respondent.

*Eileen Kaufman,* Huntington, for Touro College, Jacob D. Fuchsberg Law Center, *amicus curiae.*

### OPINION OF THE COURT

CARDONA, P. J.

In August 1984 Glenn Mays, an inmate at Elmira Correc-

tional Facility (hereinafter the facility) in Chemung County, wrote a letter to defendant Prisoners' Legal Services of New York, Inc. (hereinafter PLS) contending that correction officers at the facility used unnecessary or excessive force against him on July 17, 1984. In particular, Mays alleged that plaintiff, a correction officer at the facility, pushed him down several flights of stairs. PLS is a private not-for-profit corporation funded by the State to provide, *inter alia,* civil legal services for indigent State prison inmates and to report on conditions at State correctional facilities. Following receipt of Mays' letter, PLS opened a file, commenced an investigation of the incident and interviewed Mays. Before the matter proceeded much further, however, Mays notified PLS by letter on or about October 31, 1984 that he had changed his mind and did not want to go forward with the lawsuit. He indicated that he knew how the system worked and concluded that he could not win. No further action was taken on Mays' claim.

About 2½ years later, in March 1987, defendant Tom Terrizzi, managing attorney at the PLS office in Tompkins County, and defendant Neil H. Golder, a legal assistant at the same office (hereinafter collectively referred to as defendants), wrote a letter to the facility's Superintendent concerning their study of prisoner complaints of unnecessary and excessive violence perpetrated by correction officers at that facility. The letter made recommendations to alleviate the problem, including suggesting the transfer or dismissal of "guards who use excessive or unnecessary force on inmates". Attached to the letter was a computer printout entitled "Unnecessary/Excessive Use of Force by Guards in Elmira Correctional Facility", which set forth a list of the dates of some 38 violent incidents and the names of the inmates and the correction officers involved. The Mays complaint was described as the first of such incidents and plaintiff's name was included as one of three identified correction officers. Copies of the letter and attached list were circulated to, among others, the Chief Counsel of the Department of Correctional Services and the various complaining inmates at the facility.

Plaintiff then commenced this suit, which originally alleged three causes of action arising out of the circulation of the letter and list, the first two sounding in defamation and the third for intentional infliction of emotional distress. Before answering, PLS and defendants moved to dismiss the complaint for legal insufficiency. The motion was denied, however, and, upon appeal to this Court (146 AD2d 1, *lv dismissed* 74

NY2d 842), we determined that only plaintiff's first cause of action alleging defamation was legally sufficient. We further held that plaintiff was a public official who was required to prove actual malice before he could recover upon his defamation claim *(supra,* at 3).

At the subsequent jury trial, defendants' and PLS' motions to dismiss the complaint at the close of plaintiff's proof and for a directed verdict were denied and the jury ultimately returned a verdict in plaintiff's favor for $300,000 ($150,000 in compensatory damages and $150,000 in punitive damages). Supreme Court set the verdict aside upon motion of PLS and defendants based on an alleged prejudicial defect with respect to the verdict sheet. Thereafter, plaintiff moved for reconsideration seeking to reinstate the verdict. PLS and defendants cross-moved renewing their request that plaintiff's complaint be dismissed for failure to adduce sufficient proof of malice at the trial. Supreme Court granted the cross motion. This appeal by plaintiff followed.

■ The principal issue before this Court is whether plaintiff met his burden of proving defendants' actual malice, i.e., clear and convincing proof that defendants' statements were made with knowledge of their falsity or reckless disregard of whether they were false *(see, New York Times Co. v Sullivan,* 376 US 254, 279-280). The reckless disregard standard has been defined to mean that the defendant must have made a false statement with a "high degree of awareness of * * * probable falsity" *(Garrison v Louisiana,* 379 US 64, 74) or must have "entertained serious doubts as to the truth of his [or her] publication" *(St. Amant v Thompson,* 390 US 727, 731). Reckless disregard can also be demonstrated by the purposeful avoidance of the truth *(see, Harte-Hanks Communications v Connaughton,* 491 US 657, 668, 692). In this regard, evidence concerning motive or care is relevant *(see, supra,* at 668). Actual malice for constitutional purposes refers to the defendant's state of mind, which may be proved by circumstantial evidence *(see, supra; Prozeralik v Capital Cities Communications,* 82 NY2d 466, 475).

Under the circumstances of this case, the issue distills to whether there is clear and convincing evidence in the record of defendants' actual malice, i.e., purposeful avoidance of the truth, at the time they circulated the letter and the attached printout. Here, defendants had knowledge of the following facts. Mays was a convicted felon and had been administratively disciplined prior to the complaint. He sustained no real

injuries despite his claim that plaintiff pushed him down several flights of stairs at a time when Mays was dressed only in his underwear. Mays withdrew his request for assistance a short time after he made it. Mays' file at PLS did not contain any of the usual misbehavior, use of force, unusual incident or medical reports that are compiled by PLS staff—reports which might have corroborated or discredited his claim of brutality —even though PLS possessed his authorization to obtain such information in its file from September 1984 until 1987. We also note that none of Mays' witnesses were interviewed, nor was any attempt made to interview plaintiff. Plaintiff also adduced testimony which showed that defendants normally would not have accepted Mays' case for litigation because it lacked a significant level of brutality. Nevertheless, defendants concededly decided to include Mays' account on their list, regardless of its veracity, because it fit the pattern of brutality they were trying to demonstrate.

While the failure to investigate the truth of Mays' claim alone does not support a finding of actual malice *(see, Harte-Hanks Communications v Connaughton,* 491 US 657, 692, *supra),* here the record clearly indicates that defendants did not care about the truth because it did not serve their purpose. From the evidence at trial, the jury was entitled to infer that defendants were purposefully avoiding the truth in order to advance their cause of exposing those correction officers whom they had long suspected of brutality, rather than accurately reporting on conditions at the facility. Furthermore, in an August 6, 1987 memo sent to all PLS offices reporting on their "success in reducing guard brutality" at the facility, defendants observed: "It must have tweaked them that we sent [the computer list] with a copy of our letter to all the prisoners on the print-out. C.O. Saxton who was mentioned in the letter as a 'beater' had his lawyer send us a threatening letter." Under the circumstances of this case, we find that the evidence of defendants' motive and carelessness had a direct bearing upon the issue of their reckless disregard for the truth. Based upon our review of the entire factual record, we find that plaintiff met his prima facie burden of establishing actual malice with " 'convincing clarity' " *(Harte-Hanks Communications v Connaughton, supra,* at 659; *Prozeralik v Capital Cities Communications, supra,* at 474) and, therefore, this issue was properly submitted to the jury for its resolution.

We also find that the jury's verdict should be reinstated. As a public official, plaintiff could only recover by proving

actual malice by clear and convincing evidence. The record shows that Supreme Court properly instructed the jury on this standard. The record also shows that the jury appropriately applied this standard in its deliberations as demonstrated by its answers to questions 1 through 5 on the verdict sheet. The fact that the jury failed to answer question 7, which improperly asked whether plaintiff overcame defendants' qualified privilege* *by a fair preponderance of the evidence,* was harmless because the jury had already found reckless disregard of the truth by the higher standard of *clear and convincing evidence.*

■ We now turn to the issue of damages. Defendants urge this Court to reduce the amount of the compensatory damages awarded by the jury, claiming in effect that this amount deviated "materially from what would be reasonable compensation" (CPLR 5501 [c]). We agree with Supreme Court's analysis, expressed in dictum, that the compensatory damages must be reduced: "The $150,000 for compensatory damages is, in large measure, unsupported. While [the jury could well have found] the plaintiff was angered and emotionally upset by the defendants' inclusion of his name on the 'hit list' and that he might have reasonably feared some inmate reprisal [in the facility or on the street] there was no evidence that the effects went beyond that. His employment was not shown to have been adversely affected, and there was no supporting medical evidence that the damage to his psyche had been other than superficial and transitory." We find that damages in the amount of $35,000 are commensurate with plaintiff's injuries.

As for the award of punitive damages, while we do not condone defendants' irresponsible conduct, we do not find under the circumstances here that they acted with common-law malice *(see, Prozeralik v Capital Cities Communications,* 82 NY2d 466, 478-480, *supra).*

MERCURE, J. (dissenting). Because it is our view that Supreme Court correctly concluded that plaintiff failed to satisfy his burden of proving "malice" by clear and convincing evi-

* It had already been determined as a matter of law in this case that defendants possessed a qualified privilege based upon our holding on the prior appeal *(Sweeney v Prisoners' Legal Servs., supra)* that plaintiff was a public official *(see, Patane v Griffin,* 164 AD2d 192, 195). Parenthetically, Supreme Court also ruled at trial that, at the time of the publication, defendants were discharging their duties as PLS employees *(see, Toker v Pollak,* 44 NY2d 211, 219).

dence *(Sweeney v Prisoners' Legal Servs.,* 146 AD2d 1, 6, *lv dismissed* 74 NY2d 842), we would affirm the judgment dismissing the complaint.

A plaintiff satisfies the burden of establishing constitutional, or actual, malice by showing that "defendant in fact entertained serious doubts as to the truth of his [or her] publication" *(St. Amant v Thompson,* 390 US 727, 731; *accord, Liberman v Gelstein,* 80 NY2d 429, 438) or, stated another way, was "highly aware that it [was] probably false" *(Liberman v Gelstein, supra,* at 438). Because mere negligence does not establish constitutional malice *(see, St. Amant v Thompson, supra),* neither the failure to investigate nor refusal to permit prepublication review by the subject of the article will of itself suffice to create a factual issue *(see, Beckley Newspapers v Hanks,* 389 US 81; *James v Gannett Co.,* 40 NY2d 415, 423-424). Under the common-law definition, "a triable issue is raised only if a jury could reasonably conclude that 'malice was the one and only cause for the publication' " *(Liberman v Gelstein, supra,* at 439, quoting *Stukuls v State of New York,* 42 NY2d 272, 282).

In this case, the proof established, at most, that defendants were negligent in failing to take available steps to verify Glenn Mays' accusations concerning the incident of July 17, 1984 and the results of the investigation of their paralegal, Beverly Abplanalp-Gaede. This failure is primarily attributable to Mays' October 1984 decision not to pursue his claim against plaintiff and does not evidence any malice on defendants' part. When, more than two years later, defendants amassed the statistical information on physical abuse by correction officers, they conceivably could have carefully reviewed each file and taken any steps necessary to verify the truth of the allegations contained therein, but the fact is that defendants were merely assembling a list of inmate *complaints* and not *established incidents* of brutality. As such, as candidly acknowledged by defendant Neil H. Golder, the truth or falsity of the individual reports was irrelevant. Further, the fact that Mays' complaint of physical abuse by plaintiff and 9 or 10 other correction officers was but one of 38 incidents set forth on the computer printout, and the least proximate in time to the preparation of the report, belies any suggestion that defendants harbored any ill will against plaintiff or that malice motivated his inclusion on the list. In fact, it is uncontroverted that none of the defendants even knew plaintiff. In sum, it is our view that the proof adduced at trial

established no more than mere negligence and that the ambiguous circumstances cited by the majority for their contrary conclusion do not even approach the required standard of clear and convincing evidence.

WHITE and WEISS, JJ., concur with CARDONA, P. J.; MERCURE and CASEY, JJ., dissent in a separate opinion by MERCURE, J.

Ordered that the order and judgment is reversed, on the law and the facts, with costs to plaintiff, defendants' cross motion denied, plaintiff's motion granted, the verdict is reinstated as to liability and the matter is remitted to the Supreme Court for a new trial on the issue of damages only, unless, within 20 days after service of a copy of the order herein, plaintiff stipulates to reduce the verdict for compensatory damages to $35,000.