OPINION OF THE COURT
 

 Simons, J.
 

 The issue in this defamation case is whether plaintiff, a correction officer at Elmira Correctional Facility, proved by clear and convincing evidence that defendants acted with actual malice when they distributed a document that included his name on a list of correction officers accused of using unnecessary or excessive force.
 

 Defendant Prisoners’ Legal Services, Inc. (PLS) is a private, not-for-profit corporation that contracts with the State to provide legal services to inmates at State correctional facilities. PLS provides services on a wide range of matters, including inmates’ complaints that correction officers have used excessive force. Defendant Terrizzi is PLS’ managing attorney and defendant Golder is employed as a legal assistant. On March 23, 1987 Terrizzi and Golder wrote a letter to the Superintendent of Elmira Correctional Facility concerning their study of prisoner complaints of unnecessary and excessive violence perpetrated by correction officers at the facility. Attached to the letter was a list of some 38 violent incidents, with names of inmates and officers. Included among them was an incident involving plaintiff and an inmate named Glen Mays.
 

 The testimony at trial developed that in August of 1984, Mays wrote a letter to defendant Terrizzi in which Mays raised various complaints about the treatment he was receiving. Among other things, he complained of an incident during which plaintiff Sweeney had injured him by pushing him down several flights of stairs. Mays stated that he had been charged with misbehavior as a result of the incident, and that he had been found guilty after a prison disciplinary hearing and punished by 30 days of "keeplock” confinement. PLS opened a file upon receipt of Mays’ letter and shortly thereafter legal assistant Beverly Abplanalp-Gaede interviewed Mays
 
 *791
 
 at the facility. At that time, Mays executed an authorization permitting PLS to obtain any of his records that were in the possession of the Department of Correctional Services. Over the course of the next five weeks, Mays and Abplanalp-Gaede exchanged correspondence relating to the various complaints voiced by Mays. In a letter dated October 31, however, Mays acknowledged that his claim of excessive force would be difficult to prove, that he would be unable to get a good lawyer to represent him, and that the "system” was not in his favor. He concluded that he "could never win” a lawsuit and advised Abplanalp-Gaede that he had decided not to litigate his claim. His file at PLS was closed, and no further investigation of his allegations was conducted.
 

 Approximately two years later, defendants undertook a project aimed at reducing incidents involving excessive use of force by correction officers at Elmira Correctional Facility. Defendant Golder assembled a list of such incidents using the PLS files exclusively; no further investigation or verification of the inmates’ allegations was conducted. At the trial, defendants Terrizzi and Golder admitted that when the letter was published they did not know whether Mays’ allegation was truthful, but since their project involved the compilation, study, and reporting of inmate
 
 complaints,
 
 the veracity of the complaints was not relevant to their purpose.
 

 Golder’s list included incidents that had been reported since the summer of 1984. Each item included the name of the complaining inmate, the date and time of the incident and the names of the correction officers identified as having participated in the incident. When the assembled data was reviewed by defendants they perceived certain patterns relating to the time of day, location in the facility, and the correction officers most frequently named by inmates. In the March letter they informed the Superintendent of the study, described the patterns that had been identified, and specifically named five correction officers as those most frequently involved in alleged incidents involving the use of excessive force. Plaintiff was not among those five officers.
 

 Attached to the letter was a printout of the data base assembled by Golder, which presented the complaints in chronological order. The list bore the heading "unnecessary/excessive USE OF FORCE BY GUARDS AT ELMIRA CORRECTIONAL facility” and the earliest incident, involving inmate Mays and identifying Sweeney, was at the top of the list. It was the
 
 *792
 
 only complaint against plaintiff. Copies of the letter and list were sent to the Chief Counsel and the Commissioner for Facility Operations for the Department of Correctional Services in Albany. Copies were also distributed within the prison population to each of the inmates who had reported an incident that was included in the list. Plaintiff’s action for damages followed.
 

 As the case comes to us, plaintiff has obtained a jury verdict awarding compensatory and punitive damages for defamation, later vacated by the trial court on defendant’s motion and subsequently reinstated by a divided Appellate Division on condition that plaintiff stipulate to accept a reduced award for compensatory damages only
 
 (see,
 
 197 AD2d 189;
 
 see also, Sweeney v Prisoners’ Legal Servs.,
 
 146 AD2d 1,
 
 lv dismissed
 
 74 NY2d 842). The majority at the Appellate Division concluded that plaintiff had established actual malice by evidence in the record that (1) Mays’ complaint was not credible, (2) defendants failed to fully investigate the complaint before publishing it, and (3) defendants’ underlying motive was to prove a pattern of abusive conduct by correction officers. The appeal is before us on constitutional grounds.
 

 At trial, Sweeney testified that he had never used excessive force against an inmate, and defendants did not challenge his assertion. Indeed, defendant Terrizzi testified that after this action was commenced he spoke with Mays and concluded at that time that Mays had apparently misidentified Sweeney because the description given by Mays fit another officer. However, plaintiff’s position as a correction officer provides defendants with a qualified privilege
 
 (see, Sweeney v Prisoners’ Legal Servs.,
 
 146 AD2d, at 6,
 
 supra).
 
 He was therefore obliged not only to establish that the statement was false, but also prove by clear and convincing evidence that it was published by defendants with "actual malice”
 
 (see, Prozeralik v Capital Cities Communications,
 
 82 NY2d 466, 474;
 
 Liberman v Gelstein,
 
 80 NY2d 429, 437;
 
 Mahoney v Adirondack Publ. Co.,
 
 71 NY2d 31, 39;
 
 Park Knoll Assocs. v Schmidt,
 
 59 NY2d 205, 211).
 

 "Actual malice” means that defendants published the false information about plaintiff "with knowledge that it was false or with reckless disregard of whether it was false or not”
 
 (New York Times Co. v Sullivan,
 
 376 US 254, 280). Inasmuch as defendants did not know the statement was false, plaintiff’s claim rests on proof of a reckless disregard of whether it was
 
 *793
 
 false or not. To satisfy the reckless disregard standard, plaintiff had to establish that defendants in fact " 'entertained serious doubts as to the truth of [the] publication’ ” or that they actually had a " 'high degree of awareness of [its] probable falsity’ ”
 
 (Harte-Hanks Communications v Connaughton,
 
 491 US 657, 667, quoting
 
 St. Amant v Thompson,
 
 390 US 727, 731; and
 
 Garrison v Louisiana,
 
 379 US 64, 74;
 
 see also, Liberman v Gelstein,
 
 80 NY2d, at 438,
 
 supra).
 

 We have observed that there is a genuine and critical distinction between lacking knowledge of a statement’s falsity and being aware that it is probably false or entertaining serious doubts about its truth
 
 (see, Liberman v Gelstein,
 
 80 NY2d, at 438,
 
 supra).
 
 A qualified privilege may be sustained if the speaker is genuinely unaware that a statement is false because the failure to investigate its truth, standing alone, is not enough to prove actual malice even if a prudent person would have investigated before publishing the statement
 
 (St. Amant v Thompson,
 
 390 US, at 731, 733,
 
 supra).
 

 On the other hand, evidence that defendants purposefully avoided the truth may support a finding of actual malice if supported by evidence that defendants’ "inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity” of the published statement
 
 (Harte-Hanks Communications v Connaughton,
 
 491 US, at 692,
 
 supra).
 
 In other words, defendants’ failure to investigate cannot amount to "purposeful avoidance” unless it evidences an intent to avoid the truth
 
 (id,.,
 
 at 693). Absent some direct evidence that defendants in this case were aware that Mays’ complaint was probably false, they cannot be found to have harbored an intent to avoid the truth
 
 (see, Mahoney v Adirondack Publ. Co.,
 
 71 NY2d, at 39,
 
 supra; cf., Prozeralik v Capital Cities Communications,
 
 82 NY2d, at 475,
 
 supra).
 

 In reviewing a case of actual malice the appellate court must make a de nova review of the entire record, and determine whether the proof before the trial court supports the finding of actual malice with convincing clarity
 
 (see, Prozeralik v Capital Cities Communications,
 
 82 NY2d, at 474-475,
 
 supra; Bose Corp. v Consumers Union of U. S.,
 
 466 US 485, 514). We have done so and conclude that plaintiff did not sustain his burden of proving that defendants acted with actual malice. There was no direct evidence that defendants were aware that Mays’ claim against Sweeney was false. The Appellate Division majority concluded that Mays’ complaint was incredible
 
 *794
 
 because Mays was a convicted felon who had been administratively disciplined and who had not suffered serious injuries during the alleged incident. Even if that inference is drawn, it does not support the further inference that defendants were likely aware that Mays’ allegations were probably false. Indeed, the evidence at trial revealed that defendants’ statement was false not because the incident did not happen, but because Mays misidentified plaintiff as a participant in the incident.
 

 Nor is the Appellate Division’s finding of actual malice supported by evidence that defendants were motivated to publish the allegation against Sweeney in furtherance of their campaign to eradicate excessive force at Elmira Correctional Facility. They could not have been improperly motivated unless they were aware Mays’ complaint was false. Moreover, the Supreme Court has stated that even if a defendant’s state of mind or motivation in publishing a statement is viewed as providing circumstantial support for a finding of actual malice, such factors should not be given undue weight
 
 (see, Harte-Hanks Communications v Connaughton,
 
 491 US, at 668,
 
 supra).
 
 Finally, under these circumstances, defendants’ failure to investigate Mays’ allegation was, at most, negligent, not a "reckless disregard” of the truth amounting to actual malice sufficient to support a verdict in favor of a public official on a defamation claim.
 

 Accordingly, the judgment appealed from and order of the Appellate Division brought up for review should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith and Ciparick concur; Judge Levine taking no part.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.