Faye Gary, a lieutenant with the Gadsden Police Department, sued the City of Gadsden and Richard Crouch, in his individual capacity and in his official capacity as the Chief of Police for the Gadsden Police Department. Lt. Gary alleged claims of defamation and invasion of privacy against Chief Crouch and a claim of negligence against the City. The trial court entered a summary judgment in favor of the City, and later, on January 16, 2002, it entered a summary judgment in favor of Chief Crouch.
Lt. Gary appealed the summary judgment in favor of Chief Crouch, but she did not appeal the judgment entered in favor of the City. In Gary v. Crouch, 867 So.2d 310 (Ala. 2003) (hereinafter "Gary I"), our supreme court set forth the facts that form the basis of this dispute as follows:
 "Faye Gary is a lieutenant with the Gadsden Police Department. Richard Crouch is the chief of police. Lt. Gary became frustrated when her superiors at the Gadsden Police Department rejected her attempt to `roll' a less senior officer *Page 1132 
to a less desirable shift so that she could stay on the first shift, informing her that she could not `roll' that officer because the officer was in a different unit from Lt. Gary and that department rules prevented cross-unit `rolls.' Lt. Gary mentioned her frustration with this situation while she was talking with Robert Avery, her friend and a member of the Gadsden City Council. Councilman Avery was an outspoken critic of the administration of the Gadsden Police Department.
 "Councilman Avery asked Lt. Gary if he could discuss her situation with Chief Crouch, and Lt. Gary said he could. Councilman Avery and Chief Crouch were involved at the time in a public disagreement over allegations of brutality by the Gadsden Police Department. Avery combined his concerns about Lt. Gary's situation with his other concerns about the Gadsden Police Department and placed those concerns in [an April 26, 1999,] letter to Chief Crouch. Avery also sent the letter to all members of the city council, the mayor, the local newspaper, and local radio stations.¹
 "Chief Crouch drafted a reply [dated May 5, 1999,] to Avery's letter, the last paragraph of which read:
 "`I . . . [instructed] . . . C[mdr.] Jeff Wright [(Lt. Gary's supervisor)] to inform Lt. Gary that if she wanted to improve her chances of receiving a specialized assignment she would 1) demonstrate some commitment to the objectives and missions of the Department, 2) demonstrate that she had some capacity for work (something which I have seen very little of over the past 14 months), and 3) set a better example for her subordinates by staying out of the hair salon and nail salon while on duty. . . . And no, Robert, I do not have a problem with females or blacks. I do have a problem with non-productive, ineffective police personnel, regardless of their rank, gender or race. And I also have a problem with elected officials whose main form of exercise is jumping to unfounded conclusions and whose political leadership is based in divisiveness and dissension, regardless of their gender or race.'
 "Before mailing the [May 5, 1999,] letter to Councilman Avery, Chief Crouch sent a draft of it to Mayor Steve Means and requested his opinion. Mayor Means crossed out the paragraph set out above and returned the draft to Chief Crouch. Chief Crouch nonetheless sent the [May 5, 1999,] letter, including the paragraph Mayor Means had deleted, to Councilman Avery, Mayor Means, the city council, the local newspaper, and local radio stations.
"___________________
 "¹ As it related to Lt. Gary, the [April 26, 1999,] letter [from Avery to Chief Crouch] stated, in part:
 "`[D]o you have a problem with females, or do you have a problem with blacks? It's obvious that you have some type of problem, based on the fact that Lt. Gary was bumped off her job due to length of service, and yet you won't let her bump someone else for the same reason. I hope my assumptions are wrong and I'm waiting for your reply. . . .'"
Gary I, 867 So.2d at 311-12. Other portions of that opinion reveal the following additional facts relevant to this present appeal:
 "While Lt. Gary and Councilman Avery testified in their depositions that the information in the [May 5, 1999,] letter had been discussed on local radio programs, they could not say whether that discussion occurred before or after Lt. *Page 1133 
Gary filed this action against Chief Crouch, and, therefore, were unable to say whether the fact that the radio stations had knowledge of the [May 5, 1999,] letter stemmed from the public record of this action or from Chief Crouch's letter. However, Chief Crouch specifically stated in his deposition that it was his intention to send the [May 5, 1999,] letter to every outlet listed in the `cc' section at the bottom of his letter, which included the city council members other than Councilman Avery, the local newspaper, and various radio stations. . . .
 ". . . Cmdr. Wright's deposition testimony states at best that Cmdr. Wright knew that Lt. Gary had gone to an appointment at a hair salon once during her lunch hour, but that she asked his permission for that visit and he gave it to her. Cmdr. Wright denies having complained to Chief Crouch that Lt. Gary's visits to the salons while she was on duty were a persistent problem, as Chief Crouch argues in his brief to this Court, and he also confirmed that male officers also got haircuts while they were on duty. Lt. Gary testified in her deposition that she had not received any reprimands while Chief Crouch was chief of police,³ and that she had received good performance reviews during the time Chief Crouch had been with the Gadsden Police Department.
"_____________________
 "³Lt. Gary does discuss a warning she received when she allowed her child to ride in her patrol car, but she said in her deposition that she was not formally reprimanded for having done so."
Gary I, 867 So.2d at 315-16. In Gary I, our supreme court affirmed that part of the January 16, 2002, summary judgment that pertained to Lt. Gary's invasion-of-privacy claim, but it reversed the January 16, 2002, summary judgment entered on her defamation claim.
On remand, Chief Crouch, on April 14, 2004, moved for a summary judgment on Lt. Gary's sole remaining claim alleging defamation. In support of his summary-judgment motion, Chief Crouch cited the recently released opinion of Smith v. Huntsville Times Co.,888 So.2d 492 (Ala. 2004). Lt. Gary opposed that motion. Both parties resubmitted the same evidence that they had submitted in support of their positions on the earlier summary-judgment motion. In addition to the evidence already set forth in Gary I, supra, that evidence reveals the following pertinent facts.
When asked to explain the basis for his comment in the May 5, 1999, letter that Lt. Gary needed to demonstrate some commitment to her job, Chief Crouch responded that he did not believe that Lt. Gary demonstrated a commitment to the objectives of the police department. Chief Crouch explained that although he reviewed arrest reports on a daily basis, he did not recall seeing any arrest reports generated by Lt. Gary. Chief Crouch also stated that he reviewed accident reports and traffic citations sporadically and that he had not seen any produced by Lt. Gary. Chief Crouch admitted that as a supervisor Lt. Gary would be less likely to make such reports on a regular basis. However, Chief Crouch testified that Lt. Gary infrequently initiated disciplinary action with regard to the other officers she supervised.
With regard to his concern about the amount of time Lt. Gary spent in hair salons, Chief Crouch testified that, based on his conversations with Cmdr. Wright, he had the "impression" that the problem was a persistent one. Chief Crouch also testified that he believed he had heard that Lt. Gary spent time on duty in hair salons from other sources in the police department *Page 1134 
but that he could not recall the names of those sources.[1]
Chief Crouch admitted that Lt. Gary had not been formally reprimanded for going to a hair or nail salon while on duty. He also stated that he had reviewed Lt. Gary's personnel file in the past but that he did not review her personnel file immediately before he issued the May 5, 1999, letter in response to Avery's April 26, 1999, letter.
Cmdr. Wright testified that he had never told Chief Crouch that the amount of time Lt. Gary spent in a hair or nail salon was a persistent problem. Cmdr. Wright explained that to the best of his recollection, Chief Crouch, rather than Cmdr. Wright, had initially referenced a concern about the amount of time Lt. Gary was spending in hair or nail salons while on duty. Cmdr. Wright stated, however, that he was "not saying that [he] did not somehow initiate" that conversation. Cmdr. Wright also testified that there was gossip or rumors in the police department concerning Lt. Gary's trips to hair or nail salons and that he had told Lt. Gary that she could not continue to have regular appointments during work hours.[2]
Lt. Gary testified that she had obtained permission from Cmdr. Wright on two occasions to visit the hair salon while she was on duty (but apparently during her lunch break). She testified that other officers drove her to the appointments and picked her up afterwards. Lt. Gary also stated that although Cmdr. Wright had informed her that Chief Crouch had stated that Lt. Gary needed to demonstrate some commitment to her job and capacity for work, she characterized that conversation as "two statements [Cmdr. Wright] made. They were not discussed."
On October 20, 2004, the trial court entered a summary judgment in favor of Chief Crouch on Lt. Gary's defamation claim. In its judgment, the trial court stated:
 "This cause came to be heard on July 9, 2004, on [Chief Crouch]'s Renewed Motion for Summary Judgment. The issue argued before the Court is the status of [Lt. Gary] and the actual malice *Page 1135 
standard as it applies to defamation actions.
 "It is clear from case law that [Lt. Gary], as a Gadsden Police Officer, is a `public official,' and, therefore, [Chief Crouch] is entitled to constitutional protection as outlined in New York Times Co. v. Sullivan, 376 U.S. 254 (1964).
 "Consequently, `in a [defamation] action brought by a public [official], summary judgment for the defendant is appropriate unless the plaintiff produces clear and convincing evidence that a reasonable jury would need in order to find that the defendant published defamatory material with actual malice.' Smith v. Huntsville Times Co., [888 So.2d 492, 499 (Ala. 2004)].
 "The actual malice standard is satisfied `by proof that a false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.' Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 659 (1989). Reckless disregard is defined as `if, at the time of publication, the defendant entertained serious doubts as to the truth of its publication or acted with a high degree of awareness of its probable falsity.' . . .
 "Upon careful consideration of the case at bar, the Court concludes that [Lt. Gary] has not shown by clear and convincing evidence any actual malice on behalf of [Chief Crouch].
 "It is therefore Ordered, Adjudged and Decreed that there exists no genuine issue of material fact and [Chief Crouch]'s Motion for Summary Judgment is granted and he is dismissed as a Defendant herein."
Lt. Gary timely appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Lt. Gary maintains that our supreme court concluded in Gary I, supra, that there was a factual issue concerning whether Chief Crouch's actions rose to the level of malice (hereinafter "common-law malice") that would defeat the qualified privilege he claimed protected him from liability with regard to Lt. Gary's defamation claim. Lt. Gary also argues that the trial court erred in concluding that she had not presented sufficient evidence of the actual malice required in a defamation action against a public official (hereinafter "constitutional malice") to defeat Chief Crouch's motion for a summary judgment.
Lt. Gary has not maintained, either in this court or in the trial court, that, as a police officer, she is not a public official for the purposes of her defamation action. See Smith v.Huntsville Times Co., supra (citing St. Amant v. Thompson,390 U.S. 727, 730, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), and Haileyv. KTBS, Inc., 935 S.W.2d 857, 860 (Tex.Ct.App. 1996), for the proposition that law-enforcement officers are generally held to be public officials for the purposes of a defamation action). In fact, before both the trial court and this court, Lt. Gary has argued that the evidence she presented was sufficient to defeat Chief Crouch's summary-judgment motion under the malice standard set forth in Smith v. Huntsville Times Co., supra. Further, Lt. Gary has not argued that Chief Crouch's derogatory statements concerning her job performance are not the type of communication that is entitled to protection under the holdings of cases such as Smith v. Huntsville Times Co., supra, or New York Times Co.v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This court is confined in its review to the arguments presented to the trial court: "[o]ur review is limited to the issues that were before the trial court — an issue raised on appeal must *Page 1136 
have first been presented to and ruled on by the trial court."Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala. 1992). Moreover, this court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived. Boshell v. Keith,418 So.2d 89, 92-93 (Ala. 1982).
The initial question to be resolved in a defamation action concerns the status of the person allegedly defamed as either a public figure, a public official, or a private individual.Barnett v. Mobile County Pers. Bd., 536 So.2d 46, 54 (Ala. 1988). See also Smith v. Huntsville Times Co., 888 So.2d at 496
("The threshold question whether the actual-malice standard applies in a defamation action involves a two-pronged inquiry — whether the defendant is a public official and, if so, whether the allegedly defamatory comments related to his conduct as a public official." (footnote omitted)). In prosecuting her defamation action, Lt. Gary, because she is deemed for the purposes of this opinion to be a public official, must show that Chief Crouch's actions or statements rose to the level of constitutional malice as described in New York Times Co. v.Sullivan, supra. See Smith v. Huntsville Times Co., supra;Wiggins v. Mallard, 905 So.2d 776 (Ala. 2004); and Barnett v.Mobile County Pers. Bd., 536 So.2d at 54.
In addressing the issues raised in Lt. Gary's current appeal, this court must examine our supreme court's discussion of the element of malice contained in its opinion in Gary I, supra. As discussed below, because the requirements for the two forms of malice — common-law malice and constitutional malice — are different, the doctrine of the law of the case[3] does not apply to prevent the trial court or this court from considering the issue whether Chief Crouch was entitled to a summary judgment on the authority of Smith v. Huntsville Times Co., supra, on Lt. Gary's defamation claim. A qualified privilege may limit or defeat liability in a defamation action, but such a privilege is lost where the communication is "`actuated by express or actual malice.'" Gary I, 867 So.2d at 317 (quoting Barnett v. MobileCounty Pers. Bd., 536 So.2d at 53) (emphasis omitted). In GaryI, Chief Crouch argued that, because of his purported duty to respond to inquiries from the city council (of which Avery was a member), he had a qualified privilege that insulated him from liability with regard to Lt. Gary's defamation claim. In examining that issue, our supreme court, among other things, explained:
 "Chief Crouch argues that to survive his summary-judgment motion Lt. Gary must show that his statements were not made in good faith and that they were made with actual malice.
 "`"[S]ince the privilege under consideration is merely a qualified one, it is subject to the general rules . . . limiting qualified privileged communications; and there is no privilege where the communication is actuated by express or actual malice, and the privilege may be lost if the publication goes beyond what the occasion requires."'
 "Barnett v. Mobile County Personnel Bd., 536 So.2d [46,] 53 [(Ala. 1998)]. Thus, even if we accept the argument *Page 1137 
that Chief Crouch had a duty to respond to Councilman Avery's letter, that duty does not immunize him from his decision to send the letter to local media outlets. `[T]he privilege may be lost if the publication goes beyond what the occasion requires,' and Chief Crouch's mailing of the letter to the parties to whom he mailed it at least raises a genuine issue of material fact as to whether Chief Crouch's publication of the letter goes beyond what the occasion required.
 "This Court has also stated that `common law malice
in its traditional sense "may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like." Fulton [v. Advertiser Co.], 388 So.2d [533] at 538 [(Ala. 1980)].' Barnett v. Mobile County Personnel Bd., 536 So.2d at 54. Chief Crouch's discussion in the letter of Lt. Gary's performance appears to go beyond what was necessary to respond to Councilman Avery's request for information. Chief Crouch's decision to send the letter unedited, leaving in the paragraph critical of Lt. Gary, and to send the letter to the people to whom he mailed it suggest[s] malice and raise[s] a genuine issue of material fact as to whether Chief Crouch made the statements in the letter about Lt. Gary with actual malice so that they are, therefore, not within the privilege. Lt. Gary created genuine issues of material fact as to all the elements of defamation; therefore, the trial court erred in entering a summary judgment for Chief Crouch on Lt. Gary's defamation claim."
Gary I, 867 So.2d at 317 (second emphasis added). Our supreme court analyzed the facts of Gary I in terms of whether Lt. Gary had set forth sufficient facts to create a genuine issue of material fact with regard to whether Chief Crouch acted with common-law malice.
However, common-law malice is distinguishable from constitutional malice — the form of actual malice that must be established in a defamation action against a public official.Wiggins v. Mallard, supra; Barnett v. Mobile County Pers.Bd., supra; and Wilson v. Birmingham Post Co., 482 So.2d 1209,1213 (Ala. 1986). Our supreme court has explained:
 "The `actual malice' that a private party plaintiff must prove in order to defeat [a] qualified or conditional privilege is the traditional common law malice, and it must be distinguished from the `actual malice' required in defamation cases brought by public figures and public officials under New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. See Cousins v. T.G. Y. Stores Co., 514 So.2d 904 (Ala. 1987). `Actual malice' in its constitutional sense, or `Sullivan malice,' means knowledge of falsity or reckless disregard of truth or falsity. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597
(1966); Sullivan, supra.
 "On the other hand, common law malice in its traditional sense `may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like.' Fulton, 388 So.2d at 538. Common law malice also includes defamatory statements that are `made with knowledge that they are false or made with reckless disregard of whether they are false.' Prudential Ins. Co. of America v. Watts, 451 So.2d 310, 313
(Ala.Civ.App. 1984)." *Page 1138 
Barnett v. Mobile County Pers. Bd., 536 So.2d at 54. Our supreme court has further summarized the distinction between common-law malice and constitutional malice by stating that "constitutional malice `focuses on the defendant's attitudetoward the truth or falsity of his published material,' [whereas] common-law malice focuses generally `on the defendant'sattitude toward the plaintiff.'" Wiggins v. Mallard,905 So.2d at 786 (quoting Gomes v. Fried, 136 Cal.App.3d 924, 934,186 Cal.Rptr. 605, 611 (1982)).
In Gary I, our supreme court determined that Lt. Gary had submitted sufficient evidence to indicate common-law malice so as to defeat Chief Crouch's summary-judgment motion on Lt. Gary's defamation claim. However, the requirements for establishing common-law malice are not the same as those necessary for establishing constitutional malice. Therefore, the consideration in this appeal of the issue whether Lt. Gary has demonstrated the required level of constitutional malice is not precluded, through the doctrine of collateral estoppel or through the doctrine of law of the case,[4] by our supreme court's decision inGary I, supra.
In this appeal, Lt. Gary argues that the trial court erred in determining in its summary judgment that she had not presented clear and convincing evidence of constitutional malice. A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; andBussey v. John Deere Co., 531 So.2d 860 (Ala. 1988). "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184
(Ala. 1999) (quoting Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989)). However, as the trial court noted in its judgment, "`[i]n a [defamation] action brought by a public [official], summary judgment for the defendant is appropriate unless the plaintiff produces the clear and convincing evidence that a reasonable jury would need in order to find that the defendant published the defamatory material with actual malice.'" Smith v. Huntsville Times Co.,888 So.2d at 499 (quoting McFarlane v. Sheridan Square Press, Inc.,91 F.3d 1501, 1508 (D.C. Cir. 1996)). See also Deutcsh v. Birmingham PostCo., 603 So.2d 910, 912 (Ala. 1992) (In opposing a summary judgment on a defamation claim, "[the plaintiff] was required to present clear and convincing evidence from which a jury could conclude that the [defendant] made false and defamatory statements about him and that the statements were published with actual malice"); and Camp v. Yeager, 601 So.2d 924, 927 (Ala. 1992). The United States Supreme Court has explained:
 "[W]here the New York Times [Co. v. Sullivan]
`clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a New York Times [Co. v. Sullivan] case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing *Page 1139 
evidence or that the plaintiff has not."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56,106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (footnote omitted). The Supreme Court of Alabama has reiterated that "[a] trial judge is not required `to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Camp v. Yeager, 601 So.2d at 927 (quoting Anderson,477 U.S. at 249, 106 S.Ct. 2505).
In his April 14, 2004, motion for a summary judgment, Chief Crouch argued that Lt. Gary failed to present clear and convincing evidence of the constitutional malice required in a defamation action by New York Times Co. v. Sullivan, supra. In making his argument, Chief Crouch relied, and relies in his brief submitted to this court, on Smith v. Huntsville Times Co., supra, in which the Supreme Court of Alabama discussed the requirements for the standard for constitutional malice as follows:
 "[The] standard [for actual malice in a defamation action] is satisfied by proof that a false statement was made `"with knowledge that it was false or with reckless disregard of whether it was false or not."' Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 659, 109 S.Ct. 2678, 105 L.Ed.2d 562
(1989) (quoting New York Times v. Sullivan, 376 U.S. [254,] 279-80, 84 S.Ct. 710 [(1964)]). A defendant acts with `reckless disregard' if, at the time of publication, the defendant `"entertained serious doubts as to the truth of [its] publication" or acted "with a high degree of awareness of . . . [its] probable falsity."' McFarlane [v. Sheridan Square Press, Inc.], 91 F.3d [1501,] 1508 [(D.C. Cir. 1996)] (quoting St. Amant [v. Thompson], 390 U.S. [727,] 731, 88 S.Ct. 1323
[(1968)]) (emphasis added). `The [constitutional] actual malice standard is subjective; the plaintiff must prove that the defendant actually entertained a serious doubt.' Id. (emphasis added). See Sanders v. Smitherman, 776 So.2d 68, 71 (Ala. 2000); Finebaum [v. Coulter], 854 So.2d [1120,] 1124 [(Ala. 2003)]; see also Revell v. Hoffman, 309 F.3d 1228, 1233 (10th Cir. 2002); Flowers v. Carville, 310 F.3d 1118, 1131 (9th Cir. 2002); Chafoulias v. Peterson, 668 N.W.2d 642, 654 (Minn. 2003).
 "Malice can be shown by circumstantial evidence showing, for example, `that the story was (1) "fabricated," (2) "so inherently improbable that only a reckless man would have put [it] in circulation," or (3) "based wholly on" a source that the defendant had "obvious reasons to doubt," such as "an unverified anonymous telephone call."' McFarlane, 91 F.3d at 1512-13 (quoting St. Amant, 390 U.S. at 732, 88 S.Ct. 1323). However, malice cannot be `measured by whether a reasonably prudent man would have published, or would have investigated before publishing.' St. Amant, 390 U.S. at 731, 88 S.Ct. 1323 (emphasis added). Indeed, the failure to investigate does not constitute malice, unless the failure evidences `"purposeful avoidance,"' that is, `an intent to avoid the truth.' Sweeney v. Prisoners' Legal Servs., 84 N.Y.2d 786, 793, 647 N.E.2d 101, 104, 622 N.Y.S.2d 896, 899 (1995) (quoting Connaughton, 491 U.S. at 693, 109 S.Ct. 2678); see Gertz v. Robert Welch, Inc., 418 U.S. 323, 332, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)."
Smith v. Huntsville Times Co., 888 So.2d at 499-500.
In her brief on appeal, Lt. Gary argues that Chief Crouch's conduct was clearly malicious and willful. Lt. Gary alleges that Chief Crouch's statements were false, *Page 1140 
that he knew the statements were false, or that he made the statements with reckless disregard as to their truthfulness. In support of her argument, Lt. Gary cites the fact that Mayor Means reviewed the May 5, 1999, letter and suggested that the language to which Lt. Gary objects be deleted but that Chief Crouch did not remove that language. Also in support of her argument, Lt. Gary alleges that Chief Crouch could not provide any "specific factual basis" for his allegation that she needed to set a better example for her subordinates; that Cmdr. Wright denied ever relaying a complaint to Chief Crouch regarding Lt. Gary's visits to hair salons or nail salons; and that she was never formally reprimanded for the alleged problems.
However, the evidence indicates that before the allegedly defamatory statements were made, Chief Crouch had expressed the concerns set forth in his May 5, 1999, letter to Cmdr. Wright, and that Cmdr. Wright had relayed those concerns to Lt. Gary. Lt. Gary did not dispute those statements in any way or attempt to make Chief Crouch aware of their purported falsity. Also, the evidence indicates that some gossip in the police department pertained to the time Lt. Gary spent in the hair or nail salon.
Thus, even viewing the evidence in a light most favorable to Lt. Gary, we cannot say that Lt. Gary has presented sufficient evidence for the trial court to conclude that a jury, applying the clear-and-convincing-evidence standard, might properly determine that Chief Crouch had serious doubts about the veracity of his statements. Smith v. Huntsville Times Co., supra; andDeutcsh v. Birmingham Post Co., supra. Chief Crouch's testimony does not indicate that he had such doubts about his statements, and Lt. Gary has not presented any evidence indicating that he did, in fact, harbor such doubt. Further, the evidence in the record is not sufficient for a jury to conclude, based on clear and convincing evidence, that Chief Crouch's statements in the May 5, 1999, letter were "fabricated" or "inherently improbable," or made with a knowledge of their falsity. See Smith v.Huntsville Times Co., 888 So.2d at 499-500. See also Deutcsh v.Birmingham Post Co., 603 So.2d at 912 (determining that the plaintiff had failed to present sufficient evidence in support of his libel claim to defeat the defendant's summary-judgment motion).
The evidence concerning the details surrounding Chief Crouch's statements is in conflict. In fact, the evidence might tend to support a conclusion that a more prudent person would not have made the statements. However, our supreme court has concluded that constitutional malice is not measured by whether a prudent person would have made the allegedly defamatory statements.Smith v. Huntsville Times Co., supra.
Under a different standard of review, Lt. Gary might be correct that the evidence in the record is sufficient to create a factual question that should be resolved by the jury. However, as stated earlier in this opinion, the standard to be applied is whether Lt. Gary has presented sufficient evidence for the trial court to conclude that a jury question exists, based on clear and convincing evidence, as to whether Chief Crouch acted with constitutional malice in making the statements in the May 5, 1999, letter. Sanders v. Smitherman, 776 So.2d 68 (Ala. 2000);see also Deutcsh v. Birmingham Post Co., 603 So.2d at 912
("[The plaintiff] was required to present clear and convincing evidence from which a jury could conclude that the [defendant] made false and defamatory statements about him and that the statements were published with actual malice." (emphasis added)). In other words, the *Page 1141 
inquiry is "whether the evidence presented is such that a reasonable jury might find that actual malice has been shown with convincing clarity." Anderson v. Liberty Lobby, Inc.,477 U.S. at 257, 106 S.Ct. 2505. "`[C]lear and convincing' has been the standard mandated not only to the jury sitting for this type of case, but to the trial judge as well in his determination of the defendant's motion for [a] summary judgment." Camp v. Yeager,601 So.2d at 927, 928 (holding that the plaintiff "presented evidence that, if believed by a jury, would be sufficient to support a finding, by clear and convincing evidence, that [the defendant] knew that the statement, as understood, was false." (emphasis added)). "`[S]ummary judgment for the defendant is appropriate unless the plaintiff produces the clear and convincing evidence that a reasonable jury would need in order to find that the defendant published the defamatory material with actual malice.'" Smith v. Huntsville Times Co.,888 So.2d at 499 (quoting McFarlane v. Sheridan Square Press, Inc.,91 F.3d at 1508).
Given the facts of this case and the particular arguments presented to this court on appeal, we must conclude that Lt. Gary has failed to present sufficient evidence of constitutional malice so as to defeat Chief Crouch's properly supported motion for a summary judgment. See Smith v. Huntsville Times Co.,888 So.2d at 502 (concluding that "[i]n short, [the plaintiff] has not presented evidence of actual malice sufficient to defeat the summary-judgment motion," and affirming the summary judgment entered in favor of the defendant). Therefore, we affirm the summary judgment in favor of Chief Crouch.
AFFIRMED.
CRAWLEY, P.J., and PITTMAN, J., concur.
MURDOCK, J., concurs in the result, with writing.
BRYAN, J., concurs in the result, without writing.
[1] Chief Crouch explained:
 "[Chief Crouch]: I believe that I had had a conversation with at least one other person on this same information regarding frequent trips to — to the hair salon and/or the nail salon, but I do not — I cannot swear to that because I just — I do not recall who that was.
 "[Lt. Gary's Attorney]: All right. Are you fairly certain you did get it from somebody else as well as Captain Wright?
"[Chief Crouch]: Fairly certain, yes."
[2] Cmdr. Wright testified as follows:
 "Q [By Chief Crouch's Attorney]: . . . [H]ad you received personally any information that [Lt. Gary] was spending an inordinate amount of time in the beauty salon or nail salon?
 "A. I had heard that she was going to the beauty, well, going to whatever on Fridays.
 "Q: Okay. And do you remember where you heard that from?
 "A. No, I do not. It was scuttlebutt or gossip or whatever I had heard it.
 "Q. And was that during a period of time you were her supervisor that you received that information?
"A. Yes, it was, yes.
"Q. Did you ever sit down and talk to her about it?
 "A. We discussed it one time in my office concerning, I think it was — I don't know what the date was, have no idea. And for some reason, I think it was a Friday and it was 8:30, 9:00 o'clock in the morning and I think her appointment was at 10:00, I don't know why I recall it this way. I asked her about it. She said she did have an appointment. I said, `Okay, since you do have an appointment that'll be all right today, but that needs to be changed. You can't continue to have Friday appointments. That's not the way its going to work.' And that was the discussion we had concerning it."
[3] Our supreme court has explained that under the doctrine of law of the case, "whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case." Blumberg v. Touche Ross Co.,514 So.2d 922, 924 (Ala. 1987).
[4] See n. 3, supra.