Rel: September 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

—————————————————

## CL-2025-0255 and CL-2025-0256

—————————————————

## S.A.

### v.

## Lee County Department of Human Resources

—————————————————

## CL-2025-0257 and CL-2025-0258

—————————————————

## E.L.F.

### v.

## Lee County Department of Human Resources

Appeals from Lee Juvenile Court
(JU-21-257.03 and JU-22-486.04)

CL-2025-0255, CL-2025-0256, CL-2025-0257, and CL-2025-0258

MOORE, Presiding Judge.

S.A. ("the mother") and E.L.F. ("the father") appeal from two judgments entered by the Lee Juvenile Court ("the juvenile court") terminating their parental rights to Z.F., who was born on August 26, 2021, and I.F., who was born November 21, 2022, respectively. Because the juvenile court did not consider whether the mother was indigent and should be appointed counsel, we reverse the judgments and remand the cases to the juvenile court with instructions.

## Background

The parties were previously before this court in 2022 in an appeal from a judgment finding Z.F. to be dependent, which this court affirmed without a published opinion. See S.A. and E.F. v. Lee Cnty. Dep't of Hum. Res., 378 So. 3d 538 (Ala. Civ. App. 2022) (table). At that time, the mother and the father were represented by retained counsel. The record shows that, in August 2023, the Lee County Department of Human Resources ("DHR") returned Z.F. to the mother's custody. In November 2023, however, DHR assumed custody of both Z.F. and I.F. ("the children") and commenced new dependency actions relating to the children. At the shelter-care hearing in those cases, the mother implied

2

that she would be represented by the same retained counsel, but her retained counsel never appeared in the cases.

On December 30, 2024, DHR filed petitions to terminate the parental rights of the mother and of the father to the children. The juvenile court entered a standing order in both cases providing that, if a respondent parent who could not afford to hire counsel desired appointed counsel, the parent must file an affidavit of substantial hardship to request the appointment. On January 27, 2025, the juvenile court entered orders setting the cases for trial on February 24, 2025. Those orders were on a standard form that advised parents of their right to request appointed counsel in a termination-of-parental-rights case. The orders further provided that a failure to secure an attorney would not delay the trial of the cases. Nonetheless, on February 24, 2025, the juvenile court continued the trial to March 18, 2025, to enable the father to retain an attorney.

On March 18, 2025, the trial commenced, and DHR called its first witness, a Luverne police officer who had arrested the mother on February 7, 2025, for disorderly conduct. The police officer testified that he had responded to a report that the mother was panhandling outside

3

an automobile-parts store and that the manager of the store wanted her to leave. Upon his arrival, the mother reported to the police officer that her automobile was out of gas and that she needed money for fuel. According to the police officer, the mother refused to identify herself and caused such a disturbance that she was taken into police custody and jailed. The police officer testified that it had appeared to him that the mother was having a mental-health crisis.

Midway through the police officer's testimony, the father complained that he had not been given ample time to find an attorney and that he could not afford the one that he had contacted. The father also stated that the mother "should be getting an attorney because she don't have a job." The mother immediately requested a continuance. The father interrupted the mother before she could explain why she was requesting a continuance, but, in context, it appears that the mother was requesting that the trial be delayed until she could obtain legal representation. The juvenile court did not expressly rule on the request, but it impliedly denied the request by proceeding with the trial.

The evidence showed that the mother and the father had never married. The mother resided with the father in a house that they were

renting to own, but they were no longer in an intimate relationship, and she slept on the couch. The mother depended on the father financially. The mother suffers from schizophrenia, and she had applied for Social Security disability benefits. The mother last worked in January 2025, when she was employed at a fast-food restaurant. In early February 2025, the mother went missing. The father filed a missing person's report in Opelika, fearing that the mother was off her psychotropic medication. The mother testified that she had transported someone to Crenshaw County and that she became stranded there when she ran out of gas and did not know the directions to get back home. The mother said that, over the next few days, she had begged for money but that she did not receive sufficient funds to leave the area. She testified that she had slept in her truck for several days until she was arrested on February 7, 2025. The mother was released from the Luverne jail on February 23, 2025, the day before the original scheduled trial setting. The mother said that her truck had been impounded; after she returned to Lee County, she relied on the father to transport her to her mental-health and other appointments. The mother said that she would have to walk to work if she obtained employment.

During the trial, the father cross-examined witnesses and made objections to their testimony. The mother interspersed statements throughout the trial, and she did cross-examine one witness; she did not, however, effectively present a defense to the termination-of-parental-rights petitions. In closing, the mother again requested a continuance to, among other things, obtain a lawyer.

On March 25, 2025, the juvenile court entered judgments terminating the mother's and the father's parental rights to the children. The mother and the father filed timely postjudgment motions to alter, amend, or vacate the judgments. On April 8, 2025, while those motions were pending, the father and the mother filed notices of appeal from each judgment. The postjudgment motions were denied by operation of law, see Rule 1(B), Ala. R. Juv. P., and Rule 59.1, Ala. R. Civ. P., and the notices of appeal became effective on April 22, 2025. See Rule 4(a)(5), Ala. R. App. P. After the mother and the father appealed, they both filed an affidavit of substantial hardship to request court-appointed appellate counsel; upon finding the mother and the father to be sufficiently indigent, the juvenile court granted the requests. The mother and the

father are represented on appeal by the attorneys appointed by the juvenile court.

Issues

On appeal, the mother argues that the juvenile court erred in failing to appoint counsel for her and by denying her requests to continue the trial of the cases. The mother and the father argue that the juvenile court did not receive sufficient evidence to terminate their parental rights. We find the first issue dispositive of these consolidated appeals.

Analysis

Section 12-15-305(b), Ala. Code 1975, provides:

> "In dependency and termination of parental rights cases, the respondent parent, legal guardian, or legal custodian shall be informed of his or her right to be represented by counsel and, if the juvenile court determines that he or she is indigent, counsel shall be appointed where the respondent parent, legal guardian, or legal custodian is unable for financial reasons to retain his or her own counsel."

"The obvious purpose of § 12-15-305(b) is to ensure that indigent parents facing termination of their parental rights receive meaningful legal representation." J.Q. v. Calhoun Cnty. Dep't of Hum. Res., [Ms. CL-2025-0067, June 27, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025). This court has construed § 12-15-305(b) to require a juvenile court, upon being

7

notified that a parent may be claiming indigency, to inquire into the matter and ascertain whether the parent is unable for financial reasons to retain his or her own counsel; if so, the juvenile court has a mandatory duty to appoint counsel for the parent at the expense of the state. See J.S. v. J.C., 181 So. 3d 1067, 1070 (Ala. Civ. App. 2015).

In these cases, the mother appeared without counsel at the trial of the petitions to terminate her parental rights to the children. The juvenile court heard testimony from the first witness called by DHR that, only one month earlier, the mother had been found begging for money to fuel her truck and that she had been incarcerated for disorderly conduct at that time. The father informed the juvenile court that the mother needed an attorney because she was not employed, and the mother requested a continuance at that time. That information placed the juvenile court on notice that the mother may be indigent and that she may have the right to appointed counsel. See J.S., 181 So. 3d at 1069-70 (noting that an indigent parent does not have to personally request appointed counsel). However, the juvenile court did not halt the trial to inquire further into the matter. The juvenile court subsequently heard testimony indicating that the mother suffers from a serious mental-

8

health problem, that she had last worked in January 2025, that she went missing in February 2025, that she had been incarcerated, that she had no independent income, that she had applied for Social Security disability benefits, and that she lacked transportation. That evidence reinforced that the mother was impoverished and that she probably was unable to afford an attorney for financial reasons.

Ultimately, the juvenile court determined that the mother, as an indigent respondent, qualified for appointed counsel, but only after the trial had ended, adverse judgments had been entered against her, and she had filed an affidavit of substantial hardship. The record implies that the juvenile court would not consider appointing an attorney for the mother until an affidavit of substantial hardship was filed, as required by a local procedural order. However, "§ 12-15-305(b) does not specify the procedure a parent must follow to apply for court-appointed counsel in a termination-of-parental-rights proceeding." J.Q., ___ So. 3d at ___. Section 12-15-305(a) specifically requires a private petitioner in a termination-of-parental-rights case to formally request appointed counsel before a juvenile court must make a finding regarding indigency,[1]

---

[1]Section 12-15-305(a) provides: "Upon request and a finding of indigency, the juvenile court may appoint an attorney to represent the

but § 12-15-305(b), which applies to respondent parents, does not require a formal request. To trigger the duty of a juvenile court to determine his or her indigency, a parent may apply for indigent status by filing an affidavit of substantial hardship or by "otherwise showing that [he or] she was indigent." Ex parte B.M.F., 383 So. 3d 682, 685 (Ala. Civ. App. 2023). Rule 83, Ala. R. Civ. P., does not permit the adoption of a local rule of procedure to limit how § 12-15-305(b) should be applied. We do not believe that the mother waived her right to appointed counsel by failing to file an affidavit of financial hardship before or during the trial. Compare Harper v. Jackson Cnty. Dep't of Pensions & Sec., 494 So. 2d 428, 430 (Ala. Civ. App. 1986) (recognizing that a respondent parent may intentionally surrender right to appointed counsel in termination-of-parental-rights case by taking unequivocal action bespeaking an intention to proceed without counsel).

We recognize that requiring juvenile courts to inquire into the indigency of a parent during the trial would hinder the prompt

petitioner and may order recoupment of the fees of the attorney to be paid to the State of Alabama."

disposition of a termination-of-parental-rights case;[2] however, "the permanent severance of the relationship between a parent and his or her natural child through termination of parental rights can be achieved only through 'fundamentally fair procedures.'" V.G.J. v. Tuscaloosa Cnty. Dep't of Hum. Res., 368 So. 3d 886, 890 (Ala. Civ. App. 2022) (quoting Santosky v. Kramer, 455 U.S. 745, 754 (1982)). "[P]ermanency for a dependent child cannot be achieved through the sacrifice of a parent's right to effective assistance of counsel in a termination-of-parental-rights proceeding." V.G.J., 368 So. 3d at 892. "An indigent parent facing the termination of his [or her] parental rights is entitled to the appointment of counsel." J.A.H. v. Calhoun Cnty. Dep't of Hum. Res., 846 So. 2d 1093, 1095 (Ala. Civ. App. 2002). Because the mother was indigent, her parental rights should not have been terminated in a proceeding in which she was unrepresented by counsel. To the extent that the mother must show that she was harmed by the lack of counsel, see In re K.M.W., 376 N.C. 195, 851 S.E.2d 849 (2020) (holding that actual prejudice is not

---

[2]The record shows that the children had been safely residing together in the same foster home since November 2023 and that the foster parents intended to adopt the children if the petitions to terminate parental rights were granted. Any delay in the termination proceedings will postpone their permanency, but it will not disturb their long-standing custody arrangement.

required to obtain reversal of a judgment terminating the parental rights of a parent entered in violation of his or her right to counsel), the record shows that the mother could not adequately represent herself, whether due to her mental-health problems or lack of legal training, and, thus, any error committed by the juvenile court in failing to appoint counsel for her was not harmless. See Rule 45, Ala. R. App. P.

Conclusion

A juvenile court has discretion to deny a motion for a continuance in a termination-of-parental-rights case. See C.C. v. Madison Cnty. Dep't of Hum. Res., [Ms. CL-2024-1022, June 27, 2025] ___ So. 3d ___ (Ala. Civ. App. 2025). When the mother first requested a continuance during the trial, the juvenile court should have determined her indigency, and, upon a determination that she was unable for afford retained counsel, the juvenile court should have appointed counsel for the mother and continued the trial to allow her appointed counsel time to adequately prepare for the trial. Id. We hold that the juvenile court exceeded its discretion by proceeding with the trial without making an immediate indigency determination and by granting the mother indigent status only after the judgments were entered. Therefore, we reverse the judgments

12

and remand the cases for the mother to receive a new trial with duly appointed trial counsel.

We also reverse the judgments terminating the father's parental rights. We do not know whether the juvenile court would have reached a different decision regarding the petitions to terminate the mother's parental rights had she been properly represented by counsel. If so, the juvenile court may have also determined that the father's parental rights should not have been terminated because returning the children to the mother's custody would be a viable alternative. See M.L.M. v. Madison Cnty. Dep't of Hum. Res., 298 So. 3d 509, 514 (Ala. Civ. App. 2020) (holding that reversal of judgment terminating parental rights of a mother who was deprived of her right to counsel warranted reversal of judgment terminating the parental rights of father because, on remand, juvenile court could find mother to be a suitable custodian and a viable alternative to the termination of the parental rights of father). The father does not argue on appeal that the juvenile court erred in failing to appoint him counsel, so the father has waived his right to appointed counsel, see generally S.J. v. Limestone Cnty. Dep't of Hum. Res., 61 So. 3d 303, 306 (Ala. Civ. App. 2010)(holding that the right to appointed

13

counsel may be waived if not properly preserved for appellate review); Gary v. Crouch, 923 So. 2d 1130, 1136 (Ala. Civ. App. 2005) ("[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.").  On remand, however, the father should be allowed to participate in the new trial.

CL-2025-0255 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0256 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0257 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0258 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.