**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., | ) | |
| SMARTMATIC INTERNATIONAL | ) | |
| HOLDING B.V., and SGO | ) | |
| CORPORATION LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.: N21C-11-028 EMD |
| v. | ) | |
| | ) | |
| NEWSMAX MEDIA, INC., , | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 12, 2022
Decided: February 3, 2023

*Upon Defendant Newsmax Media, Inc.'s Motion for Judgment on the Pleadings*,
**DENIED**

Michael J. Barrie, Esquire, Kate Harmon, Esquire, Benesch, Friedlander, Coplan & Aronoff LLP, Wilmington, Delaware; J. Erik Connolly, Esquire, Nicole Wrigley, Esquire, Benesch, Friedlander, Coplan & Aronoff LLP, Chicago, Illinois. *Attorneys for Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*.

Richard L. Renck, Esquire, Tracey E. Timlin, Esquire, Duane Morris LLP, Wilmington, Delaware; Howard M. Cooper, Esquire, Joseph M. Cacace, Esquire, Jason M. Brown, Esquire, Todd & Weld LLP, Boston, Massachusetts; Mark A. Lerner, Esquire, Duane Morris LLP, New York, New York. *Attorneys for Defendant Newsmax Media, Inc.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a civil action involving a defamation claim.  Plaintiffs Smartmatic USA Corp.,

Smartmatic International Holding B.V., and SGO Corporation Limited (collectively,

"Smartmatic") allege Defendant Newsmax Media, Inc. ("Newsmax") published false and

defamatory statements about Smartmatic relating to Smartmatic's role in the 2020 United States

Presidential Election (the "Election").  Specifically, Smartmatic alleges Newsmax "published

and/or republished false statements and implications" during news broadcasts, in online reports,

and on social media that "Smartmatic participated in a criminal conspiracy" to fix, rig, and steal the Election.[1] Smartmatic maintains Newsmax's statements constitute defamation *per se* because the statements charge Smartmatic with a "serious crime and were of a nature tending to injure Smartmatic in its trade, business, and profession."[2] Smartmatic seeks damages, including economic and punitive damages.[3]

Newsmax moved for judgment on the pleadings, filing its Motion for Judgment on the Pleadings pursuant to Delaware Superior Court Civil Rule 12(c) (the "Motion").[4] Smartmatic opposed the Motion. On December 12, 2022, the Court heard oral argument on the Motion. At the conclusion of the hearing, the Court took the Motion under advisement. For the reasons set forth below, the Motion is **DENIED**.

## II.    RELEVANT FACTS

### A. THE PARTIES

Plaintiff Smartmatic USA Corp. is an "election technology and software company."[5] Smartmatic USA Corp. is incorporated in Delaware and has its principal place of business in Boca Raton, Florida.[6] During the Election, Smartmatic USA Corp. "provided election technology and software" for only Los Angeles County.[7] Smartmatic USA Corp. "played no part in the counting or tabulation of votes" in Los Angeles County.[8]

Plaintiff Smartmatic International Holding B.V. owns 100% of Smartmatic USA Corp.[9] Smartmatic International Holding B.V. is incorporated in the Netherlands and has its principal

---

[1] Complaint ("Compl.") ¶ 432, Nov. 3, 2021 (D.I. 1).
[2] *Id.* ¶ 440.
[3] *See id.* ¶ 448.
[4] *See* Defendant's Motion for Judgment on the Pleadings ("Motion"), June 10, 2022 (D.I. 69, D.I. 70).
[5] Compl. ¶ 11.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* ¶ 12.

2

place of business in Amsterdam, Netherlands.[10]  Smartmatic International Holding B.V. "owns multiple companies operating under the Smartmatic brand in almost two dozen countries."[11] Smartmatic International Holding B.V. "did not play any role in the [Election] outside of the technology and software provided by Smartmatic USA Corp. for Los Angeles County."[12]

Plaintiff SGO Corporation Limited owns 100% of Smartmatic International Holding B.V.[13]  In other words, SGO Corporation Limited owns 100% of Smartmatic International Holding B.V., which owns 100% of Smartmatic USA Corp.  SGO Corporation Limited is incorporated in the United Kingdom and has its principal place of business in London, United Kingdom.[14]  SGO Corporation Limited "did not play any role in the [Election] outside of the technology and software provided by Smartmatic USA Corp. for Los Angeles County."[15]

Defendant Newsmax oversees: (i) Newsmax news channels on television; (ii) the news website Newsmax.com; (iii) mobile apps for smartphone devices; and (iv) social media accounts, including the @newsmax Twitter handle and a YouTube page.[16]  Newsmax is incorporated in the State of Delaware and has its principal place of business in West Palm Beach, Florida.[17]  The Complaint notes that references to "Newsmax" include its "anchors, hosts, and producers working at the direction of Newsmax and within the scope of their employment with Newsmax."[18]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 13.
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 15.
[17] *Id.*
[18] *Id.* ¶ 15 n.3.

## B. SMARTMATIC'S ROLE AS AN ELECTION TECHNOLOGY COMPANY

Smartmatic was founded in 2000 in Boca Raton, Florida.[19]  Smartmatic had two founders, Antonio Mugica and Roger Piñate.  Mr. Mugica and Mr. Piñate are originally from Venezuela.  Smartmatic began as a secure online set of protocols in the banking industry but shifted its focus to election technology and software following the 2000 United States Presidential Election.[20]  Since 2003, "Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach."[21]  Smartmatic has provided its services in more than twenty-five countries.[22]  Smartmatic's mission is to "increase integrity in the democratic process through enhanced citizen engagement and trust in election systems."[23]

Currently, Smartmatic provides "end-to-end election services to local, state, and national governments."[24]  Its products include electronic voting machines, electronic counting machines, ballot marking devices, voter management, poll worker support, online voting, and election management platforms.[25]

In 2004, Smartmatic's technology was used "in the first automated election in Venezuela."[26]  The technology provided both an electronic and paper trail for each vote, which allowed election officials to cross-check and audit the vote count to ensure accurate results.[27]  Newsmax discussed the 2004 Venezuelan election often because Smartmatic contracted with the

---

[19] *Id.* ¶ 20.
[20] *Id.* ¶¶ 20-21.
[21] *Id.* ¶ 22.
[22] *Id.*
[23] *Id.* ¶ 23.
[24] *Id.* ¶ 24.
[25] *Id.* ¶ 25.
[26] *Id.* ¶ 27.
[27] *Id.*

4

"Hugo Chávez-led Venezuelan government."[28] From 2004 through 2019, Smartmatic provided election software and technology to various countries for elections.[29]

In 2018, Los Angeles County selected Smartmatic to help manufacture and implement a new election system in the County.[30] Specifically, Los Angeles County has a "Voting Solutions for All People" ("VSAP") initiative, which is intended to ensure greater voter participation through "convenient, accessible, and secure" voting options.[31] Smartmatic and Los Angeles County entered into a contract whereby Smartmatic would "manufacture (hardware and software) and implement new custom-designed [ballot marking devices]" as part of the VSAP initiative.[32] For the Election, Smartmatic did the following for Los Angeles County: "(1) engineered and manufactured the [ballot marking device] hardware," "(2) programmed and installed the [ballot marking device] software," "(3) led the California certification process," "(4) created the backend software to manage the devices," "(5) provided systems integration services," "(6) built the VSAP operations center," "(7) handled logistics and setup/breakdown of vote centers," "(8) oversaw real-time data management for deployment," and "(9) supplied Help Desk services on Election Day."[33]

Smartmatic alleges that the Election in Los Angeles County, the largest voting jurisdiction in the United States, was flawless from a technology perspective.[34] Newsmax highlights a Politico article, which is Complaint Exhibit 114, to contest Smartmatic's assertion.[35]

---

[28] Motion at 7.
[29] *See* Compl. ¶¶ 27-41.
[30] *Id.* ¶ 46.
[31] *Id.* ¶¶ 48-49.
[32] *Id.* ¶ 51.
[33] *Id.* ¶ 53.
[34] *See id.* ¶¶ 57-58.
[35] *See* Defendant's Answer and Counterclaim ("Answer & Countercl.") ¶ 57 n.6, Feb. 4, 2022 (D.I. 59); *see also* Compl., Ex. 114 (noting that the voting system in Los Angeles County had "numerous security flaws").

Smartmatic did not play a role in the Election outside of Los Angeles County.[36] Smartmatic's "technology, software, equipment, and services" were not used outside of Los Angeles County in the Election.[37] Smartmatic did not license or contract "with any third party, including other election technology companies [*i.e.*, Dominion Voting Systems], for the use of Smartmatic's technology, software, machines or services" during the Election.[38] Smartmatic played no role in the states with close vote tallies, particularly Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin.[39] "Apart from commenting on its role in the [Election] in Los Angeles County, Smartmatic made no public comments about the [Election]" before Newsmax began its alleged "disinformation campaign."[40]

## C. THE ELECTION, NEWSMAX'S GROWING AUDIENCE, AND NEWSMAX'S ELECTION COVERAGE THROUGH NOVEMBER 16, 2020

Joe Biden and Kamala Harris won the Election. There were 306 electoral votes for the President Biden, and 232 for then-President Trump.[41] Governors, Secretaries of State, members of the Election Infrastructure Government Coordinating Council Executive Committee, members of the Election Infrastructure Sector Coordinating Council, various state and federal courts, then-Attorney General William Barr, and others confirmed the security, reliability, and accuracy of the Election.[42]

From July 2020 to the week before the Election, Newsmax "averaged 58,000 viewers from 7 to 10 p.m. on weekdays."[43] At that time, Fox News' viewership numbers far exceeded

---

[36] Compl. ¶ 60.
[37] *Id.*
[38] *Id.*
[39] *Id.* ¶ 61.
[40] *Id.* ¶ 62.
[41] *Id.* ¶ 63.
[42] *Id.* ¶¶ 63-74; *see also id.*, Exs. 82, 76, 62, 73, 123, 159, 127, 152-55, 158.
[43] *Id.* ¶ 75, Ex. 146.

6

Newsmax's viewership.[44]  One week after the Election, Newsmax's ratings jumped ten-fold from its pre-Election numbers.[45]  After the Election, then-President Trump tweeted Newsmax clips to his Twitter followers, which Newsmax highlighted to its viewers.[46]  In the three days following the Election, Newsmax's viewership surpassed Fox Business and CNBC.[47]  These coverage increases led to more viewers and more money for Newsmax.[48]

Shortly after the Election, Rudolph Giuliani and Sidney Powell disseminated a false narrative that the Election was rigged for President Biden through manipulation of election technology.[49]  Mr. Giuliani and Ms. Powell started to appear regularly on Fox News around November 12, 2020, and casted Smartmatic and Dominion Voting Systems as the wrongdoers.[50]

On November 14, 2020, Steve Bannon, then-President Trump's former Chief Strategist, appeared on his Newsmax podcast, *War Room*.[51]  Mr. Bannon's guest, Brian Kennedy, identified by Newsmax as the "Chairman of the Committee on the Present Danger,"[52] stated that Smartmatic made voting machines that scanned election ballots and alleged that Smartmatic's CEO was a "Venezuelan national, and a leftist and somebody who . . . built these machines using Chinese components that themselves could be hacked into."[53]  Mr. Kennedy claimed there was "industrial level ballot manipulation," and that this was "election fraud, not voter fraud."[54]

---

[44] *Id.* ¶ 75.
[45] *Id.* ¶ 76.  Newsmax's daytime viewership also increased by a multiple of ten, and the number of daily active users on its mobile app increased fourteen-fold from pre- to post-Election.  *Id.* ¶ 76, Exs. 146, 148.
[46] *Id.* ¶ 77, Ex. 150.
[47] *Id.* ¶ 78, Ex. 151.
[48] *Id.* ¶ 78.
[49] *Id.* ¶ 80.
[50] *Id.* ¶¶ 81-82.
[51] *Id.* ¶ 84, Exs. 1-2.
[52] *Id.* ¶ 84.
[53] *Id.*
[54] *Id.* ¶ 84, Ex. 2.

On November 16, 2020, six Newsmax programs aired allegedly "false and defamatory statements about Smartmatic."[55] The programs were: *Wake Up America*, *The Chris Salcedo Show*, *National Report*, *John Bachman Now*, *The Howie Carr Show*, and *Greg Kelly Reports*.[56] "Newsmax used Fox News'[] interviews with Rudolph Giuliani and Sidney Powell on *Sunday Morning Futures with Maria Bartiromo* as a launching pad."[57] The Bartiromo show stated, among other things, "the Smartmatic system has a back door" to allow for "an intervening party a real-time understanding of how many votes will be needed to gain an electoral advantage."[58] Mr. Giuliani stated this occurred at least in Michigan.[59] In the same interview, Ms. Powell took aim at Peter Neffenger, the Chairman of Smartmatic USA Corp.'s Board of Directors and a member of the Biden transition team.[60] Ms. Powell stated "Trump won by not just hundreds of thousands of votes, but by millions of votes that were shifted by this software that was designed expressly for that purpose,"[61] and "[the software] was exported internationally for profit by the people that are behind Smartmatic."[62] Ms. Powell went on:

> But this is a massive election fraud. And I'm very concerned it involved not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also. It's the software that was the problem. Even their own manual explains how votes can be wiped away.[63]

At the time Newsmax aired the Fox News interviews, Newsmax had "no evidence that the [Election] had been rigged or stolen."[64] Chris Salcedo, the Newsmax anchor who aired the

[55] *Id.* ¶ 85.
[56] *Id.*
[57] *Id.* ¶ 86.
[58] *Id.* ¶ 86, Ex. 3.
[59] *Id.*
[60] *Id.* ¶ 86, Ex. 3; *see also id.* ¶ 112 (stating that Mr. Neffenger is a retired Admiral, was the Chairman of Smartmatic USA Corp.'s Board, and was previously the Administrator of the Transportation Security Administration).
[61] *Id.* ¶ 86, Ex. 3.
[62] *Id.*
[63] *Id.*
[64] *Id.* ¶ 88.

Fox News interview, stated Dominion/Smartmatic had "a back door software built in," which "is probably one of the reasons why Texas said no to the software[]," and suggested "Smartmatic Dominion software" allowed users to change results.[65] Mr. Salcedo had no evidence to support the assertion that Texas disallowed Smartmatic software because of a backdoor, nor that Smartmatic was used to conduct sham elections.[66]

Also on November 16, 2020, *John Bachman Now* host, John Bachman, interviewed Liz Harrington, a former spokesperson for the Republican National Committee.[67] Ms. Harrington stated "Sidney Powell is absolutely correct that this company was actually designed to steal elections for socialist dictator Hugo Chávez in Venezuela. That's what Smartmatic was designed to do."[68] At this time, Newsmax "had not seen any evidence to support the statements it published regarding Smartmatic," nor did the individuals interviewed by Newsmax provide evidence to support their statements.[69]

Later in the day on November 16, 2020, the *Howie Carr Show* interviewed L. Lin Wood, who described himself as an attorney helping President Trump in an "unofficial capacity" and working with Mr. Giuliani and Ms. Powell.[70] Mr. Wood discussed the "voting machines" used in the Election, which he stated were "subject to manipulation."[71] Mr. Wood went on:

> It started in Venezuela. It connects into Cuba. It connects into Frankfurt, Germany, where servers were stored, in Barcelona, and it tracks back ultimately to a company known as SGO Smartmatic. They developed software, that software went into a number of voting machines, almost exclusively used in the Dominion machine. The information was then processed through Scytl, that's where the manipulations occurred in the software that was reported to a company called Clarity . . . This is a scheme developed initially in Venezuela. And the scheme amounts to being able to go and buy an election in any given country. They did it in Argentina. They've

---

[65] *Id.* ¶ 89, Ex. 3.
[66] *Id.* ¶ 90.
[67] *Id.* ¶ 91, Exs. 5-6.
[68] *Id.* ¶ 93, Ex. 5.
[69] *Id.* ¶ 94.
[70] *Id.* ¶¶ 95-96, Exs. 7-8.
[71] *Id.* ¶ 98, Ex. 7.

done it in Chile. Now they've sold it to someone with the interest in manipulating the presidency for the United States.[72]

At the time of the *Howie Carr Show*, Newsmax had not seen evidence to support Mr. Wood's statements, nor had Mr. Wood provided any evidence to support them.[73]

Similar statements were made throughout the day on Newsmax's programming.[74] Hosts and guests made many statements. For example, Joe diGenova, a lawyer being interviewed on *National Report*,[75] stated:

> [Neffenger] is working for a company, Smartmatic and Dominion, which was created for Hugo Chávez in order to rig elections. Smartmatic has a history of bad performance, of bad election outcomes. They have been deplatformed in many states as a result of poor performance. . . . And I think the American people, and the people in the 27 states that had this software running their systems need to ask their public officials, why in the world would you hire this company?[76]

At the time of the show, "Newsmax had not seen any evidence to support the assertion that Smartmatic had rigged the [Election]," that Smartmatic's technology or software was used anywhere outside of Los Angeles County, or that Smartmatic engaged in a *quid pro quo* with Mr. Neffenger, a member of President Biden's transition team.[77] The individual guests, like Mr. diGenova, also did not present any evidence.[78] Smartmatic believes Newsmax had "obvious reasons to doubt the credibility of the people it quoted and the statements it published."[79]

### D. NEWSMAX'S COVERAGE OF THE ELECTION AND SMARTMATIC POST-NOVEMBER 16, 2020

From the second half of November 2020 through December 2020, Newsmax continued to cover Election events. On November 17, 2020, Emerald Robinson, Newsmax's White House

---

[72] *Id.*
[73] *Id.* ¶ 99.
[74] *See id.* ¶¶ 100-14.
[75] *Id.* ¶¶ 109-11, Exs. 18-19.
[76] *Id.* ¶ 111, Ex. 18.
[77] *Id.* ¶ 114.
[78] *Id.*
[79] *Id.*

10

correspondent, stated "Smartmatic according to [a] whistleblower [inaudible] software is essentially the ancestor for the software used by Dominion voting machines and every other tabulating machine. The whistleblower is saying that Smartmatic software is the DNA of every vote tabulating software."[80] At the time of the broadcast, "Newsmax knew there was no evidence supporting a claim that" Smartmatic's software and technology were used outside Los Angeles County, nor was there evidence that Smartmatic's software was the "DNA" of all vote tabulating software.[81]

On November 19, 2020, on *The Chris Salcedo Show*, Mr. diGenova stated Smartmatic sent votes overseas to servers in Europe "for tabulation," and that such votes "can be subjected to tampering, they can be accessed, they can be hacked before they are returned to the United States."[82] On the same broadcast, Newsmax republished a statement by Ms. Powell that Smartmatic was linked to the late Hugo Chávez.[83] On the same day, Newsmax stated it had its own "investigative unit."[84] Smartmatic claims these statements were unsupported, and that Newsmax published the "lies as part of its disinformation campaign against Smartmatic."[85]

On November 28, 2020, Michelle Malkin, a Newsmax anchor, stated:

> [S]everal Smartmatic officials left the country. Including a veteran Smartmatic official named Heider Garcia. This Venezuelan-born operative now serves, believe it or not as election administrator for Tarrant County, Texas. That's the county which turned blue for the first time since 1964. After the introduction of the dum dum dum new electronic voting machines.[86]

---

[80] *Id.* ¶ 116, Ex. 21.
[81] *Id.* ¶ 117.
[82] *Id.* ¶ 121, Ex. 25.
[83] *Id.* ¶ 122, Ex. 25.
[84] *Id.* ¶ 132, Ex. 31.
[85] *Id.* ¶ 133.
[86] *Id.* ¶ 149, Ex. 38.

11

Smartmatic claims that "Newsmax had not seen any evidence indicating that Smartmatic was used in Texas."[87]

On December 17, 2020, Michael Flynn, former White House national security advisor who was fired for making false statements to government officials,[88] appeared on *Greg Kelly Reports*. Mr. Flynn stated (i) then-President Trump won the Election, (ii) it was clear there was a "foreign influence" tied to the voting systems, and (iii) there had been "problems all over the country with this, not only Dominion but also this Smartmatic software."[89] On the same show, Patrick Byrne, former CEO of Overstock.com, stated "Chinese fingerprints are indeed on Smartmatic," which he said in the context of a larger statement that Smartmatic was foreign-funded.[90] Smartmatic claims Newsmax had no evidence to support these statements, nor did any of its guests.[91]

On December 18, 2020, *American Agenda*'s host interviewed Dick Morris, a "regular Newsmax contributor" at the time and now a Newsmax host.[92] Morris stated:

> This is actual intervention in the vote count. This is through Dominion software and Smartmatic and the accusation is here is that the vote count itself was altered and flipped through that software. You know, it's been proven in one county in Michigan, which had a two-week long forensic audit and showed that the results that originally said that Biden won with 63% were wrong, and Trump won it by 61%.[93]

Smartmatic claims Newsmax and its contributors had no evidence that Smartmatic fixed the Election, or that Smartmatic's software was used by Dominion.[94]

In total, the Complaint alleges that Newsmax stated or implied:

---

[87] *Id.* ¶ 150.
[88] *Id.* ¶¶ 373-76, Ex. 157.
[89] *Id.* ¶ 166, Ex. 45.
[90] *Id.* ¶ 167, Ex. 47.
[91] *Id.* ¶ 168.
[92] *Id.* ¶ 169; *id.* ¶ 169 n.7.
[93] *Id.* ¶ 170, Ex. 49.
[94] *Id.* ¶ 172.

- Smartmatic's election technology and software were widely used in the [Election];
- Smartmatic fixed, rigged, and stole the [Election] for Joe Biden and Kamala Harris;
- Smartmatic's election technology and software (1) were compromised or hacked during the [Election] and (2) sent votes overseas to be compromised or hacked;
- Smartmatic was founded and funded by corrupt dictators from socialist and communist countries; and
- Smartmatic's election technology and software were designed to and have fixed, rigged, and stolen elections before.[95]

## E. NEWSMAX'S COVERAGE OF SMARTMATIC AS FACTUAL AND EVIDENCE-BASED

The CEO of Newsmax, Christopher Ruddy, previously stated "America is making the switch to Newsmax TV for fair, unbiased journalism."[96] In the wake of the Election, Smartmatic alleges that the republished interviews, the Newsmax guests, and the Newsmax anchors made various comments to insinuate their coverage was fact- and evidence-based reporting. For instance, the following phrases were used: "sworn witness testimony"; "we have so much evidence I feel like it's coming in through a fire hose"; "I've seen sworn affidavits"; "I've seen sworn video statements"; "we've got the statistical and mathematical evidence that's absolutely irrefutable"; "there are hundreds of sworn affidavits which are in fact evidence"; "it proves all the research that our investigative unit here on *Stinchfield* has been uncovering."[97]

Additionally, the Complaint alleges Newsmax "discussed [certain] guests' background and experience as lawyers to create the impression that they were reliable sources of fact."[98] Moreover, Smartmatic charges that certain guests and anchors encouraged viewers to discount or ignore people who questioned the basis of the Election fraud claims.[99]

---

[95] *Id.* ¶ 173.
[96] *Id.* ¶ 175, Ex. 147.
[97] *See id.* ¶ 178.
[98] *Id.* ¶ 179.
[99] *See id.* ¶ 180, Exs. 9, 43, 29, 27.

**F. AVAILABLE INFORMATION REFUTING NEWSMAX'S CLAIMS AGAINST SMARTMATIC**

The Complaint claims Newsmax had access to information that would show Newsmax's statements about Smartmatic were false. First, publicly available information showed Smartmatic's technology and software were not used outside of Los Angeles County for the Election because each state publicly disclosed the technology it used for the Election.[100] Second, information indicated Smartmatic did not use its technology to fix, rig, or steal the Election. This includes information that Smartmatic was not used outside of Los Angeles County;[101] statements issued by national security agencies confirming the "security of the election infrastructure";[102] statements issued by election officials and election security experts that stated the Election was "the most secure in American history";[103] and a statement by the National Association of Secretaries of State that it "never heard of votes being tabulated in a foreign country."[104]

Additionally, those states with contested Election results performed audits and/or issued statements "verifying their election process and rejecting claims of fraud or rigging."[105] On November 17, 2020, Dominion sent an email to Newsmax's booking producer, Alicia Hessee, titled, "SETTING THE RECORD STRAIGHT."[106] This email highlighted the following points, among others:

- There was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised";[107]

---

[100] *Id.* ¶ 254; *see, e.g., id.* ¶ 255, Exs. 60, 63 (Georgia); *id.* ¶ 256, Exs. 66-68 (Michigan); *id.* ¶ 257, Exs. 70-72 (Pennsylvania); *id.* ¶ 258, Ex. 75 (Arizona); *id.* ¶ 259, Exs. 77-78 (Wisconsin); *id.* ¶ 260, Ex. 80 (Nevada); *id.* ¶ 261, Exs. 143-44 (Texas).

[101] *Id.* ¶ 284, Exs. 85, 125.

[102] *Id.* ¶¶ 285-87, Ex. 112.

[103] *Id.* ¶¶ 288-93, Exs. 117, 119, 121, 127.

[104] *Id.* ¶ 295, Ex. 132.

[105] *Id.* ¶ 298; *see also id.* ¶¶ 299-309, Exs. 61-63, 65, 69, 73-74, 76, 79, 81-82, 123.

[106] *Id.* ¶ 312, Ex. 160 (capitalization in original).

[107] *Id.* ¶ 312(a).

- Factual information that supported the notion that "[v]ote deletion/switching assertions are completely false";[108]
- Michigan's and Georgia's Secretary of State websites that provided information that debunked claims of vote manipulation;[109] and
- Links to the Election Assistance Commission's and the Cybersecurity and Infrastructure Security Agency's websites, which noted that all voting systems provide assurances that they work accurately and reliably.[110]

On December 11, 2020, Smartmatic sent Newsmax a retraction demand letter, explaining why the statements regarding election fixing, rigging, and stealing were false.[111] Additionally, in December 2020, Dominion sent retraction demand letters to Newsmax.[112]

Third, Smartmatic maintains that information existed to show Smartmatic's technology and software were not compromised or hacked during the Election.[113] Smartmatic also contends that information existed that shows that Smartmatic did not send votes overseas to be compromised or hacked.[114]

Fourth, the Complaint alleges that information existed to show Smartmatic was not controlled by corrupt dictators. For instance, Smartmatic's website states it has no ties to governments or political parties;[115] Smartmatic made statements that it has no ties to Hugo Chávez;[116] and Smartmatic halted work with the Venezuelan government in 2017 after that government reported false turnout numbers.[117]

Fifth, Smartmatic avers that information existed to show Smartmatic's technology was not designed with a purpose to fix, rig, or steal elections. For instance, the Complaint notes that

---

[108] *Id.* ¶ 312(b).
[109] *Id.* ¶ 312(c)-(d).
[110] *Id.* ¶ 312(e).
[111] *Id.* ¶ 314, Ex. 54.
[112] *Id.* ¶ 315, Ex. 56.
[113] *See id.* ¶ 316; *see also id.* ¶¶ 318-31.
[114] *Id.*
[115] *Id.* ¶ 335, Exs. 83, 85.
[116] *Id.* ¶ 336, Ex. 100.
[117] *Id.* ¶ 337, Exs. 85, 106.

15

third party validators authenticated Smartmatic's technology, including the State of California, PricewaterhouseCoopers, and the U.S. Election Assistance Commission.[118]

## G. PROCEDURAL POSTURE

On November 3, 2021, Smartmatic filed this action against Newsmax and alleged one cause of action—defamation for false statements and implications about Smartmatic.[119] Specifically, Smartmatic alleged Newsmax committed defamation *per se* because Newsmax "charged Smartmatic with a serious crime," and the statements "were of a nature tending to injure Smartmatic in its trade, business, and profession."[120] On February 4, 2022, Newsmax filed its Answer and a Counterclaim under anti-SLAPP statutes.[121] Additionally, Newsmax asserted neutral reportage privilege as an affirmative defense.[122] On February 24, 2022, Smartmatic filed its Answer to Newsmax's Counterclaim.[123]

On June 10, 2022, Newsmax filed the Motion.[124] Smartmatic opposed the Motion.[125] On December 12, 2022, the Court heard oral argument on the Motion and took the matter under advisement.[126]

## III.  PARTIES' CONTENTIONS

Newsmax contends Smartmatic has not satisfied the elements to plead defamation, and, even if Smartmatic did, Newsmax is protected by the neutral reportage privilege. Specifically, Newsmax argues most of the challenged statements in the Complaint do not satisfy the "of and

---

[118] *Id.* ¶ 345.
[119] *See id.* ¶¶ 431-47.
[120] *Id.* ¶ 440.
[121] *See* Answer & Countercl. at Count One.
[122] *See id.* at Ninth Affirmative Defense.
[123] *See* Answer to Counterclaim ("Answer to Countercl."), Feb. 24, 2022 (D.I. 60).
[124] *See* Motion.
[125] *See* Plaintiffs' Answering Brief ("Answering Br."), Aug. 9, 2022 (D.I. 78). Newsmax filed its Reply on September 30, 2022. *See* Defendant's Reply Brief ("Reply Br."), Sept. 30, 2022 (D.I. 106).
[126] *See* Judicial Action Form, Dec. 12, 2022 (D.I. 127).

concerning the plaintiff" element of defamation.[127]  Newsmax also claims Smartmatic is at least

a limited purpose public figure, and, as such, Smartmatic failed to plead facts to support a claim

that Newsmax acted with actual malice when it published the allegedly defamatory statements.[128]

Finally, Newsmax maintains its speech is protected under the neutral reportage privilege.[129]

Specifically, Newsmax argues this privilege applies because Newsmax "accurately reported

unprecedented allegations without endorsing those allegations."[130]

Smartmatic contends it is not a public figure, and actual malice does not apply.[131]

Smartmatic further contends, even if it is a public figure, it sufficiently pled facts to show

Newsmax published defamatory statements with actual malice.[132]  Regarding the neutral

reportage privilege, Smartmatic argues Newsmax failed to show the privilege applies under

either New York law or Florida law.[133]  Smartmatic asserts it sufficiently pled facts supporting

defamation; namely, it alleged facts that show the statements satisfy the "of and concerning the

plaintiff" requirement for defamation.[134]  Smartmatic also contends it pled facts that show the

statements published by Newsmax were false.[135]

## IV.    STANDARD OF REVIEW

A party may move for judgment on the pleadings under Civil Rule 12(c).[136]  When the

Court decides a motion under Civil Rule 12(c), it must view the facts pled and the inferences to

---

[127] *See* Motion at 13.
[128] *See id.* at 20.
[129] *See id.* at 48.
[130] *See id.* at 54.
[131] *See* Answering Br. at 20.
[132] *See id.* at 25.
[133] *See id.* at 43-49.
[134] *See id.* at 55.
[135] *See id.* at 62.
[136] Del. Super. Ct. Civ. R. 12(c).

17

be drawn from those facts in a light most favorable to the non-moving party.[137] Additionally, the Court takes the well-pled facts alleged in the complaint as admitted.[138] The Court also assumes the truthfulness of all well-pled factual allegations in the complaint.[139] Therefore, the Court must accord a plaintiff opposing a Civil Rule 12(c) motion the same benefits as a plaintiff opposing a Civil Rule 12(b)(6) motion.[140] Given the similarity between 12(b)(6) motions and 12(c) motions, "the Court engages certain 12(b)(6) procedures during 12(c) review."[141] For example, the Court can consider documents outside the pleadings that are integral to and incorporated into the them.[142] This may be done without converting the 12(c) motion into a motion for summary judgment.[143] The Court may grant a motion for judgment on the pleadings "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[144]

## V.    DISCUSSION

### A.  NEWSMAX'S EXHIBITS AND CHOICE OF LAW

Before the Court reaches the substance of Newsmax's Motion, there are two preliminary matters to resolve: (i) whether the exhibits attached to the Motion can be considered, and (ii) whether the Court must determine the choice of law at this stage.

Newsmax filed numerous exhibits with its Motion. Newsmax states the exhibits, which are "articles and other documents," are "not cited for the truth of the facts asserted, but rather to show the public discussion and context of the Newsmax reporting" because "context is critical"

---

[137] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also Warner Commc'ns, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Ch. 1989), *aff'd without opinion*, 567 A.2d 419 (Del. 1989).
[138] *Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.
[139] *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).
[140] *See id.*
[141] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Aug. 16, 2021) (citation omitted).
[142] *Id.* (citations omitted).
[143] *Sapienza v. Delaware State Univ. Police Dep't*, 2020 WL 4299137, at *2 (Del. Super. July 24, 2020) (citation omitted).
[144] *Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.

for the Motion.[145]  Newsmax cites to *Camejo v. Angelini Pharma Inc.*[146] to support its argument.[147]

Camejo states in the 12(b)(6) context, which is equally applicable in the 12(c) context, that "the Court may consider certain extrinsic documents when they are: (1) integral to the plaintiff's claim and incorporated into the complaint[,] (2) not being relied upon to prove the truth of its contents, and (3) an adjudicative fact to judicial notice."[148]  Essentially, Newsmax looks to the second prong.[149]

Newsmax's exhibits will not be considered.  *Camejo* cites *In re Gardner Denver, Inc.*, which cites *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JBM Managers, Inc.*[150]  *Vanderbilt Income* states documents outside the pleadings can be incorporated "when the document is not being relied upon to prove the truth of its contents."[151]  *Vanderbilt Income* cites *In re Santa Fe Pac. Corp. S'holder Litig.*, which discusses the "truth of its contents" prong and states courts "have also considered the relevant publication in libel cases."[152]  The case that *In re Santa Fe Pac. Corp. S'holder Litig.* cites for the libel example is *Fudge v. Penthouse Int'l, Ltd.*[153]  In *Fudge*, the First Circuit affirmed a district court's consideration of an article that the defendant attached to its motion to dismiss.[154]  The First Circuit affirmed the district court

---

[145] *See* Motion at 6 n.3.
[146] 2021 WL 141338 (Del. Super. Jan. 15, 2021).
[147] *See* Motion at 6 n.3.
[148] *Camejo*, 2021 WL 141338, at *2 (cleaned up) (citing *In re Gardner Denver, Inc.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014)).
[149] *See* Motion at 6 n.3.
[150] 691 A.2d 609, 613 (Del. 1996).
[151] *Id.* (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995)).
[152] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 70.
[153] 840 F.2d 1012, 1015 (1st Cir. 1988).
[154] *See id.* at 1015.

because, *inter alia*, "the article was not merely referred to in plaintiffs' complaint but was absolutely central to it."[155]  That is not the case here.

Here, Newsmax asserts the articles and other documents are intended to show the public discussion and context of Newsmax reporting.[156]  That is distinct from what the above caselaw holds.  Additionally, Newsmax cited no legal authority other than *Camejo* for its proposition. The Court does not agree that *Camejo* and the cases on which it relies stand for the proposition that the Court should consider the Motion's exhibits.  As such, the Court will exclude the Motion's exhibits as matters outside the pleadings.[157]

The next issue is whether the Court must determine the choice of law governing this action now, or whether it is premature to do so at this stage.

Newsmax argues that "[t]o the extent the Court applies substantive law beyond federal constitutional principles, Florida law should govern."[158]  To support its argument, Newsmax notes Delaware courts apply the *Restatement (Second) of Conflict of Laws* (the "*Restatement*").[159]  Newsmax argues the *Restatement* "points to the law of the plaintiff's domicile" in internet-published defamation actions.[160]  Newsmax is referring to Smartmatic USA Corp.'s principal place of business in Boca Raton, Florida.[161]  On the other side, Smartmatic agrees Delaware courts use the *Restatement*'s "most significant relationship" test but disagrees that Florida law applies.[162]  Smartmatic notes that only one of the three Plaintiffs have its

---

[155] *See id.*
[156] Motion at 6 n.3.
[157] *See* Del. Super. Ct. Civ. R. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented and not excluded by the Court, the motion shall be treated as one for summary judgment.").  Here, the Court is excluding the exhibits as matters outside the pleadings, and the Court is not treating the Motion as one for summary judgment.
[158] *See* Motion at 12 n.5.
[159] *See id.*
[160] *See id.*
[161] Compl. ¶ 11.
[162] Answering Br. at 17-18.

principal place of business in Florida, and under the *Restatement*, the Court should consider the state where Newsmax committed the alleged acts of defamation.[163]  Smartmatic argues, at a minimum, discovery is necessary to address which state's law applies because it is unclear whether Newsmax published the statements in Florida or its New York studio.[164]

When this Court conducts a choice of law analysis, it follows the "most significant relationship" test set out in the *Restatement*.[165]  "When determining which state's law applies to a tort involving multistate defamation, Restatement [Section] 150 applies."[166]  Section 150 states in pertinent part:

> (1) The rights and liabilities that arise from a defamatory matter . . . on broadcast over . . . television . . . are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in [*Restatement* Section] 6.
> (3) When a corporation . . . claims to have been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation . . . had its principal place of business at the time, if the matter complained of was published in that state.[167]

"Aggregate communications" are "communications published simultaneously in two or more states."[168]  Comment f to *Restatement* Section 150 states:

> Determination of which is the state of the applicable law is more difficult when the defamer's act or acts of communication are done in a state other than that of plaintiff's principal place of business and when the matter complained of is published in the state of the plaintiff's principal place of business and in one or more other states to which the plaintiff has a substantial relationship.  In this last situation, the local law of the state of the plaintiff's principal place of business will be applied unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties.[169]

---

[163] *Id.* at 18.
[164] *Id.* at 18-19.
[165] *Schmidt v. Wash. Newspaper Publ'g Co., LLC*, 2019 WL 4785560, at *2 (Del. Super. Sept. 30, 2019) (citing *Smith v. Delaware State Univ.*, 47 A.3d 472, 480 (Del. 2012)).
[166] *Id.* (citation omitted).
[167] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150 (1971).
[168] *Schmidt*, 2019 WL 4785560, at *2 (citing *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765 (D. Del. 2012)).
[169] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150, cmt. f.

Comment f goes on:

Other contacts that the forum will consider in determining which is the state of most significant relationship with respect to the particular issue include (a) the state or states where the defendant did his act or acts of communication, such as assembling, printing and distributing a magazine or book and (b) the state or states of the defendant's domicile, incorporation or organization and principal place of business.[170]

Smartmatic alleges Newsmax published defamatory statements on *Greg Kelly Reports*, which is broadcast from New York.[171] But Smartmatic argues discovery has not shown whether other allegedly defamatory statements were published in Florida or New York.[172] Smartmatic is correct. Given the circumstances—not knowing where the Newsmax broadcasts occurred and the fact that Florida is the principal place of business for only one of three Plaintiffs—the Court finds that is not appropriate, at this time, to determine which state's law applies.

Moreover, Newsmax concedes in its Reply that the Court "need not engage in a choice of law analysis at this stage since Newsmax is grounding its arguments on neutral reportage on First Amendment law."[173] Both parties also contend the outcomes here are the same regardless of whether New York or Florida law applies, apart from Newsmax's neutral reportage privilege.[174]

The parties have not adequately briefed the choice of law question. Therefore, the Court should not decide choice of law until discovery reveals a more detailed record. Even if the Court applies the law most favorable to Newsmax, which is Florida law, the Court holds that the Motion still fails.

---

[170] *Id.*
[171] Answering Br. at 19.
[172] *Id.*
[173] Reply Br. at 26 n.10.
[174] *See* Answering Br. at 19 ("On most defamation issues raised by Newsmax's motion, Florida law and New York law do not appear to conflict. But they do conflict when it comes to the so-called 'neutral reporting' privilege."); Reply Br. at 26 n.10 (noting that even if New York law applies, the "neutral reportage defense still applies since it is grounded in First Amendment jurisprudence").

## B. SMARTMATIC IS A LIMITED PURPOSE PUBLIC FIGURE

Newsmax argues there is "no doubt" Smartmatic is a public figure.[175] To support this claim, Newsmax points to the following: Los Angeles County is the most populous voting county in the United States; Smartmatic was selected to be part of the VSAP initiative; Smartmatic has been involved in elections all around the world; Smartmatic technology has processed more than five billion votes worldwide; and public discussion of election accuracy and integrity is fundamental to a functioning democracy.[176] Newsmax argues that, together, Smartmatic invites attention and comment.[177] On the other side, Smartmatic contends it is not a public official nor a public figure. Smartmatic argues it has not achieved the "pervasive fame or notoriety" necessary to be considered an all-purpose public figure. Moreover, Smartmatic argues it is not a limited-purpose public figure because it did not (1) invite public attention, (2) voluntarily inject itself into public controversy related to this litigation, (3) assume a position of prominence in the controversy, or (4) maintain regular or continuing access to the media.[178]

Under Delaware law and United States Supreme Court precedent, a limited purpose public figure is one who "voluntarily injects [itself] or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."[179] Whether a plaintiff is a public figure is a question of law.[180] Under Florida law, courts employ a two-step analysis to determine whether a plaintiff is a limited purpose public figure.[181] Step one is

---

[175] Motion at 23.
[176] *See id.* at 23-25.
[177] *See id.* at 25.
[178] Answering Br. at 23 (citing *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 22 F. Supp. 3d 240, 250-51 (S.D.N.Y. 2014)).
[179] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *Page v. Oath Inc.*, 270 A.3d 833, 843 (Del. 2022) (citing *Gertz*, 418 U.S. at 351).
[180] *Agar v. Judy*, 151 A.3d 456, 477 (Del. Ch. 2017) (citing RESTATEMENT (SECOND) OF TORTS § 580A, cmt. c. (1977)).
[181] *See Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. Dist. Ct. App. 2002).

whether there is a "public controversy," meaning whether a "reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution."[182]  Step two is "whether the plaintiff played a sufficiently central role in the instant controversy to be considered a limited purpose public figure for the purposes of that controversy."[183]  Under New York law, to determine whether a plaintiff is a limited purpose public figure, the defendant must show that the plaintiff:

> (1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of the litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.[184]

If a plaintiff is found to be a limited purpose public figure, the *New York Times v. Sullivan* standard of actual malice will apply.[185]

Here, the "public controversy" is defined as the accuracy and integrity of the Election as it relates to voting technology and software.  Under Delaware law, Smartmatic is a limited purpose public figure.  *Page v. Oath Inc.* states a public figure is one who "voluntarily injects himself or is drawn into a particular public controversy."[186]  There is no doubt that Smartmatic was at least "drawn into" the public controversy surrounding the accuracy and integrity of the Election.  The Complaint is filled with statements made by Newsmax and its guests about Smartmatic.  Moreover, Newsmax frequently discussed Smartmatic on its broadcasts for "over a month."[187]

---

[182] *Id.* (citing *Gertz*, 418 U.S. at 323).
[183] *Id.* at 846 (citing *Gertz*, 418 U.S. at 345).
[184] *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 44 (N.Y. App. Div. 2021) (citing *Lerman v. Flynt Disrtib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984)).
[185] *See Gertz*, 418 U.S. at 352.
[186] *See Page*, 270 A.3d at 843 (citing *Gertz*, 418 U.S. at 351).
[187] *See* Compl. ¶¶ 115-72.

24

Under Florida law, Smartmatic is a limited purpose public figure. Step one—the "public controversy" step— is satisfied. In *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, the Florida District Court of Appeal found the plaintiff to be a limited purpose public figure.[188] The plaintiff manufactured hydraulic winches, which are employed by "off-road enthusiasts for hauling stranded motor vehicles."[189] The defendant published an article about the plaintiff in its magazine.[190] The Florida court found the plaintiff to be a limited purpose public figure because there was a "pre-existing public controversy in a segment of the population" regarding hydraulic winches versus electric winches, and off-road magazine readers would be "impacted by the resolution of the instant dispute."[191] Similarly here, there was a "pre-existing public controversy in a segment of the population" regarding the accuracy and integrity of the Election, including its voting software. Moreover, this segment of the population could be "impacted by the resolution" of this litigation. Step two is met because Smartmatic "played a sufficiently central role" in this instant controversy as part of the VSAP initiative in Los Angeles County, the largest voting jurisdiction in the United States.[192]

Under New York law, it is less clear whether Smartmatic is a limited purpose public figure under the four-prong test. Importantly, under New York law, "[a]n individual can become a limited purpose public figure only through his own actions" and "may generally not be made a public figure through the unilateral acts of another."[193]

Under the first prong of the test, Smartmatic does not appear to have "invited public attention . . . to influence others prior to" the controversy surrounding the Election's voting

---

[188] *Mile Marker, Inc.*, 811 So. 2d at 845.
[189] *Id.* at 843.
[190] *See id.*
[191] *See id.* at 845.
[192] *See* Compl. ¶¶ 46-49, 58.
[193] *Gottwald*, 148 N.Y.S.3d at 44 (citations omitted).

technology and software.[194]  Smartmatic alleges in the Complaint that there was no controversy in Los Angeles County.[195]  Moreover, Smartmatic states that it made no public comments regarding the Election before the "disinformation campaign" began.[196]  Under the second prong, it does not appear Smartmatic "voluntarily injected" itself into the Election-related controversies because it made no public comments before its was attacked, and it played a role only in Los Angeles County where there was no vote-counting controversy.[197]  To the Court, it seems more likely that Smartmatic was involuntarily dragged into the controversy.

Under the third prong, Smartmatic likely assumed a position of prominence in the controversy.  Smartmatic played a prominent role in the Election because it was part of the VSAP initiative and provided services to Los Angeles County, the largest voting jurisdiction in the United States, even if that County was not contested.[198]  Prong four—maintaining access to the media—is unclear.  Newsmax makes only conclusory allegations for this prong, citing to paragraphs in the Complaint that state the VSAP initiative provided Smartmatic with a unique role in the largest voting jurisdiction in the United States.[199]  Newsmax has not carried its burden under this four-prong test.

This disparity in outcome based on different states' laws creates a serious issue.  All the caselaw from Delaware, Florida, and New York are derived from *Gertz v. Robert Welch, Inc.*, which is the Supreme Court case that first identified the limited purpose public figure.  *Gertz* defines the limited purpose public figure as one who "voluntarily injects himself or is *drawn into a public controversy.*"[200]  Here, Smartmatic was at least drawn into the public controversy

---

[194] *See id.*
[195] Compl. ¶ 59.
[196] *Id.* ¶ 62.
[197] *Id.* ¶¶ 59-62.
[198] *Id.* ¶¶ 46-49, 58.
[199] *See* Reply Br. at 10; Compl. ¶¶ 46, 52-53, 58.
[200] *See Gertz*, 418 U.S. at 351 (emphasis added).

regarding the accuracy and integrity of the Election. The test seems overly broad. Given the prevalence of electronic reporting (television, radio, internet, podcasts, social media), a person or entity could be "drawn into" pretty much anything. However, *Gertz* is controlling as Supreme Court precedent. Under the broad *Gertz* test, the Court finds that Smartmatic is a limited purpose public figure.

## C. ELEMENTS OF DEFAMATION

Newsmax contends "most" of the challenged statements from the Complaint do not sufficiently refer to Smartmatic, and Smartmatic failed to allege several of the statement were false.[201] Smartmatic contests both arguments.[202]

To state a claim for defamation under New York law, a plaintiff must establish: "[1] a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, [2] published without privilege or authorization to a third party, [3] amounting to fault . . . , and [4] either special harm or constituting defamation per se."[203] A statement constitutes defamation *per se* if it "(1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman."[204]

To state a claim for defamation under Florida law, a plaintiff must establish: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on the matter concerning a public [figure] . . . ; (4) actual damages; and (5) statement must be

---

[201] *See* Motion at 13-20.
[202] *See* Answering Br. at 55-68.
[203] *Kasavana v. Vela*, 100 N.Y.S.3d 82, 85-86 (N.Y. App. Div. 2019) (citation omitted).
[204] *Id.* at 86 (citation omitted).

defamatory."[205] "[W]hen the claim is defamation per se, liability itself creates a conclusive legal presumption of loss or damage and is alone sufficient for a jury to consider punitive damages."[206]

The Court finds that Newsmax fails to carry its burden to show the statements were not concerning Smartmatic, and Smartmatic did not allege certain statements were false. Newsmax seemingly wants the Court to make a hyper-literal reading of every statement.[207] Newsmax argues that because the name "Smartmatic" is not in several of the alleged defamatory statements, these statements cannot refer to Smartmatic.[208] The Court cannot engage in this type of reading of the Complaint. In Newsmax's own words, "[i]nstead of viewing the statements as isolated phrases, they should be viewed in the full context of the broadcasts."[209]

A reading of the statements published or republished by Newsmax shows the statements in the Complaint refer to Smartmatic. First, the publications and republications often conflated Smartmatic and Dominion as if they were one company and working together.[210] Further, Newsmax argues Smartmatic failed to allege defamatory statements regarding Smartmatic International Holding B.V. and SGO Corporation Limited;[211] however, the Complaint cites at least one statement published by Newsmax that refers to "SGO Smartmatic."[212] Under Florida law, defamation can be premised on statements that are not direct statements naming the plaintiff. "[A] tortfeasor could juxtapose a series of facts in such a way that a specific person is

---

[205] *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)).
[206] *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. Dist. Ct. App. 2010) (citation omitted).
[207] *See* Motion at 14 (arguing that most of the statements refer to the security and reliability of electronic voting generally, and that there is not even a passing mention to Smartmatic in these statements).
[208] *See id.*
[209] *See id.* at 55.
[210] *See, e.g.*, Compl. ¶¶ 89, 159, 220(f), 220(k).
[211] *See* Motion at 14 n.6.
[212] *See* Compl. ¶ 98.

28

identifiable even though that person's name has not been used."[213]  Newsmax fails to meet its burden to show the statements in the Complaint fail to refer to Plaintiffs.

Newsmax next claims Smartmatic failed to allege a number of the statements were false. However, throughout the Complaint, Smartmatic repeatedly alleges the statements were false. Context is important, and it is not appropriate at this stage to cherry-pick statements that may or may not be false, which is what Newsmax requests.

Therefore, the Court finds that Newsmax is not entitled to judgment as a matter of law as it relates to the issues Newsmax contests with respect to Smartmatic's alleged pleading deficiencies.

## D. ACTUAL MALICE

Actual malice applies because Smartmatic is a limited purpose public figure.  Newsmax contends the Complaint fails to allege facts to establish Newsmax acted with the requisite level of fault, *i.e.*, actual malice.[214]  Smartmatic disagrees and notes the Complaint alleged facts that show Newsmax published defamatory statements with actual malice.[215]

"Actual malice" means a defendant made a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not."[216]  To satisfy the "reckless disregard" standard, a plaintiff must show the defendant "in fact entertained serious doubts as to the truth of [its] publication" or had "a 'high degree of awareness of . . . probable falsity.'"[217]  Failure to investigate a statement's truth or falsity, alone, is insufficient to establish actual

---

[213] *See Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1213 (M.D. Fla. 2021).
[214] *See* Motion at 20.
[215] *See* Answering Br. at 25.
[216] *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773 (1986).
[217] *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 74 (1964)).

malice.[218]  However, the "purposeful avoidance of the truth" is different.[219]  If there is "some direct evidence" that the statement "was probably false," the factfinder "may infer that the defendant 'intended to avoid the truth.'"[220]  The plaintiff must establish actual malice by "clear and convincing" evidence.[221]

The Court finds that Smartmatic pled facts from which there is a reasonable inference that Newsmax acted with actual malice.  Newsmax argues there "is nothing inherently improbable about an allegation that a voting machine company has ties to a foreign nation or leader, or of an error in the software that can (or did) switch votes."[222]  Newsmax also argues it is not inherently improbable that Smartmatic had ties to Hugo Chávez, or that Smartmatic would have a relationship with Dominion.[223]  The Court disagrees and finds "there is at least a reasonable inference of actual malice based on the alleged facts" when viewed in Smartmatic's favor.[224]

Smartmatic pled facts to show Newsmax's "allegations [were] so inherently improbable that only a reckless [person] would have put them in circulation,"[225] and that Newsmax had "obvious reasons to doubt the veracity of the" speakers and their reports.[226]  Smartmatic provides statements in the Complaint that were published or republished by Newsmax as examples of evidence of actual malice.  For example, Smartmatic asserts: (i) Newsmax knowingly disregarded publicly available information,[227] (ii) Newsmax published and republished false and

---

[218] *See id.* at 732-33.
[219] *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989).
[220] *See US Dominion, Inc. v. Newsmax Media, Inc.*, 2022 WL 2208580, at *32 (Del. Super. June 16, 2022) (cleaned up) (quoting *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 647 N.E.2d 101, 104 (N.Y. 1995)).
[221] *Hepps*, 475 U.S. at 773.
[222] *See* Motion at 29.
[223] *See id.* at 30.
[224] *See US Dominion, Inc.*, 2022 WL 2208580, at *33.
[225] *See St. Amant*, 390 U.S. at 732.
[226] *See id.*
[227] *See* Compl. ¶¶ 251-348.

improbable claims that either had no support or were from unreliable sources,[228] and (iii) Newsmax promoted a false storyline to increase viewership and increase profits.[229] "At the pleading stage," Smartmatic must "allege facts from which th[e] Court can draw a reasonable inference of actual malice when viewed" in Smartmatic's favor.[230] Altogether, the Complaint pleads facts from which the Court can reasonably infer Newsmax acted with actual malice.

As in *US Dominion, Inc. v. Newsmax Media, Inc.*, where Newsmax argued that Dominion's allegations were mere conclusory statements,[231] Newsmax again makes the same argument here.[232] The Court holds that this argument fails here as it did in *US Dominion, Inc.* Namely, Newsmax either knew its statements regarding Smartmatic's role in the Election fraud narrative were false, or at least it had a high degree of awareness that they were probably false. This is highlighted by the allegations in the Complaint that Newsmax possessed or was aware countervailing evidence from the Department of Justice and election experts when Newsmax published or republished Election fraud comments, which permits the reasonable inference that Newsmax knew its allegations of fraud were probably false. Whether Smartmatic will be able to prove actual malice by clear and convincing evidence is immaterial at this stage in the proceedings. For now, it is reasonably conceivable Newsmax acted with actual malice.

### E. NEUTRAL REPORTAGE DEFENSE

Newsmax maintains that the neutral reportage privilege applies to its potentially defamatory conduct. Specifically, Newsmax argues the neutral reportage privilege is "mandated by the Constitution."[233] Newsmax continues, "Newsmax both reported on, and provided a forum

---

[228] *See id.* ¶¶ 349-96, 231-50.
[229] *See id.* ¶¶ 412-16.
[230] *See US Dominion, Inc.*, 2022 WL 2208580, at *33.
[231] *See id.*
[232] *See* Motion at 26.
[233] Reply Br. at 26.

for discussion of, a news story of extraordinary public interest, presenting unprecedented allegations without adopting them as true, so that the public could draw its own conclusions."[234] Smartmatic disagrees with Newsmax's contentions. First, Smartmatic points out the neutral reportage privilege is not mandated by the Constitution because the United States Supreme Court "has never recognized it."[235] Moreover, Smartmatic argues, even if the neutral reportage privilege is available in this case, it would not apply because Newsmax did not report on the Election fraud claims neutrally.[236]

The Court cannot grant Newsmax's Motion on the current record before it at this stage of the proceedings. This is true even if the neutral reportage privilege applies as a defense, which is not entirely clear as it depends on which state's law applies to this case. The parties focus on the neutral reportage privilege test set out by the Second Circuit in *Edwards v. Nat'l Audubon Soc'y, Inc.*[237] *Edwards* states that "when a responsible, prominent organization . . . makes serious charges against a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity."[238] The reason for such press protection, in essence, is to ensure a "robust and unintimidated press," where a publisher believes "reasonably and in good faith" that its reporting "accurately conveys the charges made."[239] However, the First Amendment is not unlimited.[240] For instance, when a "publisher who in fact espouses or concurs in the charges made by others, or who deliberately

---

[234] *Id.*

[235] Answering Br. at 43 (citing *Khawar v. Globe Int'l, Inc.*, 965 P.2d 696, 705 (Cal. 1998) ("The United States Supreme Court has not stated whether it agrees with [the neutral reportage privilege set forth in *Edwards v. Nat'l Audubon Soc'y, Inc.*], and it has never held that the First Amendment mandates a neutral reportage privilege.")).

[236] *See id.*

[237] 556 F.2d 113 (2d Cir. 1977).

[238] *Id.* at 120 (citation omitted).

[239] *See id.*

[240] *See, e.g.*, *Times Film Corp. v. City of Chicago*, 365 U.S. 43, 47 (1961) (recognizing that the press's right to be free from even prior restraints is "not absolutely unlimited").

distorts these statements to launch a personal attack of [its] own on a public figure," then neutral reportage does not apply.[241]

Here, Smartmatic's well-pled allegations support the reasonable inference that Newsmax's reporting was neither accurate nor disinterested/unbiased. First, it is reasonably conceivable Newsmax's reporting was not accurate. Namely, on November 17, 2020, Dominion sent an email to Newsmax's booking producer, Alicia Hessee, which was titled, "SETTING THE RECORD STRAIGHT."[242] This email provided information from Election experts that cut against the narrative that the Election was stolen.[243] Although sent by Dominion, it applies equally to Smartmatic because the email discussed, *inter alia*, the lack of evidence of Election fraud. Moreover, on December 11, 2020, Smartmatic sent Newsmax a retraction demand letter, explaining why the statements regarding election fixing, rigging, and stealing were false.[244] Despite being provided with this information, Newsmax did not mention it on any broadcast during the relevant period following the Election, and Newsmax continued to cast Smartmatic as a player in Election fraud.

Likewise, it is reasonably conceivable Newsmax's reporting was not neutral or dispassionate. The Complaint makes allegations that Newsmax's reporting was not dispassionate because Newsmax premised its coverage on the conclusion that the Election was stolen,[245] and supported and endorsed statements by guests regarding Smartmatic and the Election.[246] "By skewing the questioning and approving responses in a way that fit or promoted a narrative in which [Smartmatic] committed election fraud," it is reasonably conceivable that

---

[241] *Edwards*, 556 F.2d at 120 (citation omitted).
[242] Compl. ¶ 312, Ex. 160 (capitalization in original).
[243] *See id.* ¶ 312.
[244] *Id.* ¶ 314, Ex. 54.
[245] *See id.* ¶ 151 (describing a tweet stating "How The Steal Was Done: Dominion, Smartmatic").
[246] *See* Answering Br. at 53 (citing Compl. ¶¶ 92-93, 96-98, 101-03, 119, 121, 128-31, 141-43, 154, 156-59, 165).

Newsmax was not dispassionate and did not report the issues surrounding Smartmatic truthfully or dispassionately.[247]

As noted, the neutral reportage privilege applies only when the reporting is accurate and disinterested. The Complaint pleads allegations that Newsmax's reporting was neither accurate nor disinterested. Newsmax contends Smartmatic "deceptively omitted" portions of broadcasts,[248] and Newsmax identified its guests and those guests' roles.[249] These arguments may offer facts probative of accurate and disinterested reporting at a later stage of this proceeding. For now, at this stage, the facts must be construed in the light most favorable to Smartmatic.

Therefore, the neutral reportage privilege does not support judgment as a matter of law in favor of Newsmax.

## VI.     CONCLUSION

Accordingly, for the foregoing reasons, Newsmax's Motion is **DENIED**.

**IT IS SO ORDERED**.

February 3, 2023
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress

---

[247] *See US Dominion, Inc.*, 2022 WL 2208580, at *31.
[248] *See* Motion at 56-59.
[249] *See id.* at 59-61.